**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| SIERRA CLUB, INC.; PEOPLE FOR PROTECTING THE PEACE RIVER, INC.; and MANASOTA-88, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS; and COLONEL ALFRED A. PANTANO, JR., <br><br> Defendants. | Case No. 3:10-cv-00564-HLA-JBT |

**FEDERAL DEFENDANTS' POST-HEARING MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# INTRODUCTION

Plaintiffs ask this Court to ignore the reasoned judgment of the U.S. Army Corps of Engineers to issue a permit to Mosaic Fertilizer to discharge dredged or fill material into waters of the United States in connection with Mosaic's plan to mine phosphate ore in Hardee County, Florida. The Corps issued that permit following a robust regulatory process during which it addressed in its 101-page environmental assessment the very issues raised here by Plaintiffs. Although the issues that the Corps considered and analyzed during its administrative process are technical and scientifically complex, the question that Plaintiffs' motion boils down to is simple when considered in light of the applicable standard of review: Have Plaintiffs made a "clear showing" that the Corps' permit decision and environmental analysis were "arbitrary and capricious" where Plaintiffs cite to no deficiency in the permit that they ask this Court to enjoin; where Plaintiffs identify no specific legal error in the environmental assessment that they ask this Court to vacate; and where the only "evidence" that they cite are declarations signed by their lead trial counsel (among others) and a few newspaper articles – many of which post-date the decisions, and none of which are part of the 100,000-plus page administrative record that must serve as the basis of judicial review? The answer is no. As Plaintiffs have failed to carry their heavy burden of demonstrating that the Corps' permit decision and environmental assessment were arbitrary and capricious in any respect, their motion for injunctive relief must be denied.

# ARGUMENT

A preliminary injunction is an "extraordinary and drastic remedy," *Munaf v. Geren*, 128 S. Ct. 2207, 2219 (2008); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1136 (11th Cir. 2005), and Plaintiffs are not entitled to an injunction unless they proffer "substantial proof" and make a "clear showing" that such extraordinary relief is necessary. *Mazurek v. Armstrong*,

1

520 U.S. 968, 972 (1997). To do this, Plaintiffs must satisfy this Court that they are likely to succeed on the merits of their claim that the Corps' decision here was arbitrary and capricious, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. NRDC*, 129 S. Ct. 365, 374 (2008); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d at 1128. Because this Court is reviewing a highly technical decision that the Corps reached following extensive study and consideration of the evidence in the administrative record, the standard of review is "exceedingly deferential." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008). "The court's role is to ensure that the agency came to a rational conclusion, not to conduct its own investigation and substitute its own judgment for the administrative agency's decision." *Id.* (citations and quotation marks omitted).

I. **PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON ANY OF THEIR CLAIMS**

At the preliminary injunction phase, this Court may set aside the Corps' permit decision or environmental assessment ("EA") only if Plaintiffs make a clear showing that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(a); *Sierra Club*, 526 F.3d at 1360 (this standard is "exceedingly deferential" to the Corps). Plaintiffs have not carried their heavy burden, as they have failed to identify any specific legal deficiencies with the Permit or EA that it asks this Court to set aside. Instead, Plaintiffs offer only general allegations which prove nothing except that the Sierra Club may have reached a different decision if Congress had vested it – rather than the Corps – with statutory authority to issue permits. And rather than cite to the very decision documents that they ask this Court to set aside (*i.e.,* the EA and Permit), Plaintiffs rely on a handful of declarations and newspaper articles that they filed with their brief. *See* Doc. No. 15 (Pls.' Br.)

2

and Nos. 5-10 (Pls.' Exhibits).  But these exhibits are not "evidence," as judicial review here is narrowly cabined to the administrative record compiled by the Corps.  *See Camp v. Pitts*, 411 U.S. 138, 141 (1973) (in cases such as this brought under the Administrative Procedure Act ("APA"), "the focal point of judicial review should be the administrative record" compiled by the agency); *C.I.R. v. Neal*, 557 F.3d 1262, 1279 (11th Cir. 2009) (judicial review under APA is limited to the record compiled by the agency, "not some new record made initially in the reviewing court").

Plaintiffs briefed at length and devoted much of oral argument to press their view that this Court should enjoin further work under the Permit and vacate the EA because the U.S. Environmental Protection Agency ("EPA") at one point expressed concerns with the proposed project and because the two agencies discussed that the Corps may one day perform an environmental impact statement ("EIS") to address, on an area-wide basis, the cumulative impacts of phosphate mining in South Florida.  *See* Pls.' Br. at 19 (alleging that "EPA's correspondence demonstrates that the Corps utterly failed to discharge its obligations under the Clean Water Act"); *id.* at 11-12, 16, 18-19, 22; *see also* Transcript of Hearing on Preliminary Injunction ("Tr.") at 10:13-16 (MR. REESE: "When the Army Corps and the EPA agree that there needs to be an additional evaluation and the process needs to be modified, that is essentially saying that this current permit should not be issued . . . ."); *id.* at 7:24-25; 8:15-24; 9:3-10; 10-11.

But in this Circuit, where the "lead agency" – here the Corps – makes "a reasoned decision based on its evaluation of the significance, or lack of significance, of the information submitted by commenting agencies," it is entitled to deference, even if it ultimately decides to "rely on the reasonable opinions of its own qualified experts."  *N. Buckhead Civic Ass'n v.*

3

*Skinner*, 903 F.2d 1533, 1539 (11th Cir. 1990) (citing *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 377 (1989)).  Moreover, EPA could have elevated the individual permit decision if it thought further review was necessary, but EPA did not do so.[1]  In any event, the Corps considered and addressed each of EPA's concerns.  *Id.*; *Cal. Trout v. Schaefer*, 58 F.3d 469, 475 (9th Cir. 1995) ("the Corps considered [EPA's] initial concerns, addressed them, and explained why it found them unpersuasive") (quotations omitted); *see also* Doc. No. 56, Ex. 1 at 11-12, 27-29, 40; Exs. 7, 8, 9 (Corps acknowledging and responding to EPA's concerns).  Moreover, Plaintiffs' claim that "EPA has advised the Corps that they still have concerns about the environmental impact" of the Project, Tr. at 8:16-18, even if true, would not warrant an injunction because the Corps responded to EPA's comments and had no legal obligation to perform an EIS based on EPA's concerns.  *See Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 957 (9th Cir. 2008) ("[t]hat EPA disagreed with the Corps' assessment does not create a substantial issue requiring an EIS . . . .").

The Corps conducted a thorough cumulative impacts analysis – which Plaintiffs neither cited in their brief nor addressed at oral argument – and concluded that "the cumulative and secondary impacts" associated with the Project "would not be significant."  Doc. No. 56, Ex. 1 at 61.  Contrary to Plaintiffs' claim that the Project may have adverse effects on water quality and drinking water, Tr. at 11:1-10, the Corps considered these very points in its EA, Doc. No. 56, Ex. 1, 35, 50 (water quality and water supply), 50, 52-54 (water quality), and Plaintiffs do not

---

[1] EPA and the Corps have executed a Memorandum of Agreement establishing procedures for elevating individual permit decisions.  *See* Aug. 11, 1992 Clean Water Act Section 404(q) Memorandum of Agreement Between [EPA] and the Dep't of the Army, *available at* http://www.usace.army.mil/CECW/Documents/cecwo/reg/mou/moa_epa404q.pdf (last visited on July 25, 2010).  EPA also has authority to veto a decision by the Corps to issue a Section 404 permit if EPA's Administrator determines that the permitted discharge will have an "'unacceptable adverse effect' on municipal water supplies,  . . . wildlife, or recreational areas."  40 C.F.R. § 231.1(a); 33 U.S.C. § 1344(c).

contend that the Corps' consideration of these issues was arbitrary and capricious. Plaintiffs – without identifying a single deficiency in the EA or Permit – have asked this Court to enjoin the Permit while the Corps and EPA "do this area-wide EIS . . . [which] may take two or three years, then reevaluate what type of a permit should be issued." Tr. at 10:7-10. Plaintiffs confuse two issues, neither of which warrants injunctive relief.

On the one hand, Plaintiffs acknowledge that EPA has considered the environmental impacts associated with *this Project*, and that EPA declined to elevate its concerns for further review. Tr. at 8:19-20 (MR. REESE: EPA "actually said what we're not going to do is attempt to veto" the Project). On the other hand, Plaintiffs contend that interagency dialogue regarding a hypothetical future study that may address the cumulative impacts of phosphate mining on an area-wide basis is relevant here, but they fail to explain how such discussions undermines the Corps' reasoned decision that *this particular Project* did not meet the significance threshold sufficient to trigger the Corps' obligation under the National Environmental Policy Act ("NEPA") to perform an EIS.

### A.   Plaintiffs Have Failed To Raise A Colorable NEPA Claim.

Plaintiffs' contend that the Corps acted arbitrarily and capriciously by preparing an EA and not an EIS. The only way that Plaintiffs could demonstrate that they are likely to succeed on the merits of their NEPA claim is if they were to show that the Corps acted arbitrarily and capriciously by: (1) failing to rely on the factors Congress directed it to consider; (2) failing to consider an important aspect of a problem; (3) accepting an explanation that runs counter to the evidence; or (4) making a decision so implausible that it cannot be the result of differing viewpoints or the result of the Corps' expertise. *Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209, 1216 (11th Cir. 2006). As explained below, Plaintiffs have not done that here.

*First*, Plaintiffs characterize the Corps' decision to issue this Permit as "business as usual" and something that the Corps supposedly did without deliberation. Tr. at 64:14-17. That is incorrect. The Corps conducted ten site visits, consulted with multiple agencies, relied on numerous scientific studies, and in doing this considered more than 100,000 pages of material. Doc. No. 56, Ex. 1 at 2-5, 10-19, 38-39. The EA explains in detail each decision made by the Corps and it provides the agency's rationale for its conclusions. *See* Doc. No. 56, Ex. 1 at 1-102 (EA). The Corps also reasonably determined that an EA was sufficient here, and that an EIS was unnecessary. 33 C.F.R. § 230.7(a) ("Most permits will normally require only an EA.").

*Second*, Plaintiffs allege that the mitigation plan will not work and cite to a declaration that they filed with their preliminary injunction motion. *See* Doc. No. 8. That declaration – which Plaintiffs do not allege was submitted to the Corps during the regulatory proceedings – simply offers Sierra Club's opinion that mitigation will fail, but it does not establish that the Corps' conclusions were contrary to the evidence or irrational. *Citizens for Smart Growth v. Peters*, No. 07-14122-CIV, --- F. Supp. 2d ---, 2010 WL 1817332, at *7 (S.D. Fla., May 3, 2010) (citing *Druid Hills Civic Ass'n, Inc. v. FHWA*, 772 F.2d 700, 711 (11th Cir. 1985)) (a court will not "decide which party utilized the better methodology"). There can be no battle of experts in NEPA cases, *id.*, and because the Corps relied on its technical expertise and followed its regulations, it is entitled to considerable deference. *N. Buckhead Civic Ass'n*, 903 F.2d at 1543 ("The questions presented for review in this section are classic examples of 'a factual dispute the resolution of which implicates substantial agency expertise, so we must defer to the informed discretion of the responsible agencies.'") (quoting *Marsh*, 490 U.S. at 376).

The partial administrative record also contradicts Plaintiffs' claim that Mosaic's past mitigation efforts were unsuccessful. *See* Pls.' Br. at 14-16. The Corps reviewed Mosaic's

6

history of mitigating for wetland impacts, incorporated a "risk factor" to account for Mosaic's mitigation history, and then Corps reasonably concluded that compensatory mitigation is appropriate here. Doc. No. 56, Ex. 3 at 91-95. Moreover, contrary to Plaintiffs' claims that the Corps did not account for the time between impacts to jurisdictional waters and mitigation, Pls.' Br. at 20-21, the Corps specifically addressed that very issue to ensure there is no net functional loss to any waters of the United States. Doc. No. 56, Ex. 1, at 61-62, 68-69, 75-79, Ex. 3 at 64-90. Although Plaintiffs characterize the Corps' adaptive management plan for streams as "implicitly" admitting that the mitigation plan will fail, nothing could be further from the truth. Pl.'s Br. at 14. The Corps' adaptive management plan – inclusion of which in mitigation plans is standard Corps' practice[2] – ensures that the mitigation plan considers and accounts for risks.

Plaintiffs have failed to make the required "clear showing" that the Corps action was arbitrary and capricious. As pointed out in the Corps' brief in opposition to a preliminary injunction and at oral argument, Plaintiffs have failed to cite any particular deficiency in the Permit they ask this Court to enjoin or any legal error in the EA they ask this Court to vacate.[3] Plaintiffs have failed to carry their heavy burden on their NEPA claims.[4]

---

[2] *See* Corps Regulatory Guidance Letter No. 02-2, *Guidance on Compensatory Mitigation Projects for Aquatic Resource Impacts Under the Corps' Regulatory Program Pursuant to Section 404 of the CWA and Section 10 of the Rivers and Harbors Act of 1899* (2002), subsection h Contingency Plan, at 10, *available at* http://www.usace.army.mil/CECW/Pages/rglsindx.aspx.

[3] On July 16, 2010, Plaintiffs filed a Notice of Supplemental Authority calling attention to *Sierra Club v. Van Antwerp*, 2010 WL 2600507 (D. D.C. June 30, 2010). *See* Doc. No. 65. Plaintiffs also briefly discussed this case in their rebuttal at oral argument. *See* Tr. at 59:7-18. Plaintiffs have never explained why they view this case as relevant here, as that case is materially distinguishable. Although it involves NEPA and Clean Water Act challenges to a permit issued by the Corps, in that case "turbid, silt-laden water was discharged from the development site in violation of the Corps permit," *id*. at 1, and the United States decided to institute a civil enforcement action against the permittee, that was later settled in a court-approved consent decree. Here, there are no allegations that Mosaic has violated the terms of its permit.

[4] Plaintiffs also allege that the Corps failed adequately to consider impacts of the Project on nearby residents. *See* Pls.' Br. at 16. But the Corps addressed those issues in its EA and Plaintiffs do not offer

**B.     Plaintiffs' Clean Water Act Claims Are Meritless.**

The Corps reasonably concluded that the Project minimizes impacts to waters of the United States and, in response to EPA and other comments, ensured that Mosaic will substantially reduce bayhead wetland impacts and stream impacts from the alternative that Mosaic advocated. *See* Doc. No. 56, Ex. 1 at 62; Ex. 2 at 108. This was an environmentally sound decision that requires Mosaic to avoid over 70 percent of all bay systems and 68 percent of streams on the 10,856-acre tract. *See* Doc. No. 56, Ex. 2 at 108-09. The Corps recognized that the Project will impact certain wetlands and streams. It nevertheless reasonably concluded that the mitigation plan that Mosaic is required by law to implement will offset all such impacts. Specifically, Mosaic must protect by conservation easement 481.1 acres of created wetlands and 61,016 linear feet of created streams; restore 43 acres of wetlands and uplands and 1,416 linear feet of streams; and grant a conservation easement for 2,020.8 acres in and adjacent to floodplains of the Peace River and its tributaries. Doc. No. 56, Ex 1 at 62; Ex. 3 at 1-95. The total impacts to waters of the United States represents 7% of the total mining disturbance or 5% of the entire project site. Doc. No. 56, Ex. 2 at 100-01. Thus, through minimization of on-site impacts, the Corps has ensured that 93 percent of Mosaic's mining activities occur in uplands. Plaintiffs cannot establish anything irrational about this.

Although Plaintiffs did not specifically discuss "alternative 4" in their opening brief, they stated at oral argument that "the Corps never really stated why that was being denied. They did not state anything other than Mosaic wants to mine more rock." Tr. at 59:1-6. Alternative 4 would have authorized 11 stream crossing impacts – 6 more than the adopted alternative – and would strain the capacity of existing clay settling areas. Doc. No. 56, Ex. 1 at 28. Contrary to

---

any reason why the Corps' decision was arbitrary and capricious in that regard. *See* Doc. No. 56, Ex. 1 at 32, 51-53.

Plaintiffs' characterization, the Corps carefully examined that alternative and offered a reasoned basis for rejecting it as impracticable. Doc. No. 56, Ex. 1 at 27-28. Moreover, the Corps concluded that mining only the uplands was not practicable. *See id.*

Plaintiffs have also failed to make a "clear showing" that they are entitled to injunctive relief based on the Corps' decision not to hold a public hearing. Under the Corps' regulations, "[i]f the Corps determines that it has the information necessary to reach a decision and that there is 'no valid interest to be served by a hearing,' the Corps has the discretion not to hold one." *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 545 (11th Cir. 1996) (quoting 33 C.F.R. § 327.4(b)). The Corps received nine written requests to hold a public hearing, and determined that each issue raised in the comments were either insubstantial or had already been considered. Doc. No. 56, Ex. 1 at 15, Table 2. This discretionary decision is entitled to deference.

## II. PLAINTIFFS WILL NOT SUFFER IMMEDIATE, IRREPARABLE HARM IN THE ABSENCE OF AN INJUNCTION

The Eleventh Circuit has explained that an injunction cannot issue unless the moving party establishes that "irreparable harm is likely," and that "[e]nvironmental litigation is not exempt from this requirement." *United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983). Plaintiffs have not demonstrated that they are likely to suffer irreparable harm. "Part of the harm NEPA attempts to prevent in requiring an EIS is that, without one, there may be little if any information about prospective environmental harms and potential mitigating measures." *Winter*, 129 S. Ct. at 376. Plaintiffs have not identified any "prospective environmental harms" and "potential mitigating measures" that the Corps failed to consider in its EA, and their claim for injunctive relief in this respect fails as a matter of law. Further, even if the effectiveness of wetland mitigation is disputed by Plaintiffs, it is up to the Corps to weigh the evidence. *See NRDC v. FAA*, 564 F.3d at 561 (it is not the role of reviewing courts in APA cases to resolve

9

scientific disputes); *see Buckhead Civic Ass'n*, 903 F.2d at 1543 (technical expertise entitled to deference). Plaintiffs' have failed to demonstrate that they are likely to suffer irreparable harm.[5]

### III. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR DENYING INJUNCTIVE RELIEF

Plaintiffs do not even address all of the public interest factors considered by the Corps in its EA. *Compare* Pls.' Br. at 22 (discussing environmental concerns and drinking water) *with* Doc. No. 56, Ex. 1 at 31-37 (discussing water quality, conservation interests, the regional economy, recreation, food production, mineral needs, aesthetics, fish and wildlife values, flood hazards, land use, navigation, shore erosion and accretion, and the needs and welfare of the people). Plaintiffs also ignore the effects that an injunction may have on the regional economy or the role of phosphate to the Nation's agriculture industry. *See* Doc No. 56, Ex. 1 at 36-37 (Permit will help make "an uninterrupted source of phosphate" available to the Nation at competitive prices). Because the public interest must be addressed "separately from and in addition to whether the applicant [for stay] will be irreparably injured absent a stay," *NRDC v. Winter*, 502 F.3d 859, 863 (9th Cir. 2007), *aff'd*, 129 S. Ct. 365 (2008) (citations omitted), Plaintiffs have not made a "clear showing" that this injunction will not harm the public interest, as they have focused narrowly on a small subset of the Corps' public interest review.

### CONCLUSION

As Plaintiffs have failed to carry their heavy burden of demonstrating that the Corps' permit decision and environmental assessment were arbitrary and capricious in any respect, their motion for injunctive relief must be denied.

---

[5] Plaintiffs do not claim that they will suffer irreparable injury based on the Corps decision to forego holding a public hearing, and thus clearly are not entitled to injunctive relief on that claim. *See All Care Nursing Serv., Inc. v. Bethesda Memorial Hosp., Inc.*, 887 F. 2d 1535, 1537 (11th Cir. 1989) (preliminary injunction will not issue unless the movant carries its burden of persuasion for all four prongs).

Respectfully submitted this 26th day of July, 2010,

              IGNACIA S. MORENO
              Assistant Attorney General
              Environment & Natural Resources Division

              */s/ Adam J. Katz*
              ADAM J. KATZ
              Trial Attorney
              Environmental Defense Section
              U.S. Department of Justice
              P.O. Box 23986
              Washington DC 20004
              Telephone: (202) 514-2689
              Facsimile: (202) 514-8865
              adam.katz@usdoj.gov

              J. NATHANAEL WATSON
              Trial Attorney
              Natural Resources Section
              U.S. Department of Justice
              P.O. Box 663
              Washington, DC 20044
              Telephone: 202.305.0475
              Facsimile: 202.305.0267
              joseph.watson@usdoj.gov

Of Counsel:

Christina D. Storz
United States Army Corps of Engineers

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| SIERRA CLUB, INC.; PEOPLE FOR PROTECTING THE PEACE RIVER, INC.; and MANASOTA-88, INC., </br></br>   Plaintiffs, </br></br>         v. </br></br> UNITED STATES ARMY CORPS OF ENGINEERS; and COLONEL ALFRED A. PANTANO, JR., </br></br>   Defendants. | Case No. 3:10-cv-00564-HLA-JBT |

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing was served July 26, 2010 via CM/ECF to all counsel who have consented to that form of service, and via e-mail to remaining counsel, each of whom has consented to service by email.

                              */s/ Adam J. Katz*