UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SIERRA CLUB, INC.; PEOPLE FOR
PROTECTING PEACE RIVER, INC.; and
MANASOTA-88, INC.,

    Plaintiffs,

v.                                              Case No.: 3:10-cv-564-J-25JBT

UNITED STATES ARMY CORPS OF
ENGINEERS; and ALFRED A. PANTANO, JR.,

    Defendants,

    and

MOSAIC FERTILIZER, LLC,

    Defendant-Intervenor.

**MOSAIC'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT AND AMEND THE AMENDED COMPLAINT REGARDING MOSAIC'S "NOTICE OF AREA 2 MINING"**

    Intervenor Defendant, Mosaic Fertilizer, LLC ("Mosaic"), opposes Plaintiffs' Motion for Leave to Supplement and Amend the Amended Complaint Regarding Mosaic's "Notice Of Area 2 Mining" ("Plaintiffs' Motion"). The requested amendment is legally insufficient and would frustrate the expedited resolution of this case contemplated by the Eleventh Circuit Court of Appeal's decision. It should therefore be denied.

**INTRODUCTION**

    Plaintiffs' Motion is a "red herring" intended to attack Area 2 mining and it is incongruous with this Court's already expedited review of the U.S. Army Corps of Engineers' (the "Corps") decision to issue to Mosaic Permit SAJ-1997-4099 ("Permit") under Section 404 of the Clean Water Act ("CWA"). In compliance with the Eleventh

Circuit's mandate, this Court has ordered an expedited summary judgment procedure for the parties to address whether the Corps' decision passes muster under the constrained standard of review of Section 706 of the Administrative Procedure Act ("APA"). Plaintiffs' "Second Supplemental and Amended Complaint for Declaratory and Injunctive Relief" (the "SSAC") includes claims that have *nothing to do* with the administrative challenge before this Court on the pending Amended Complaint for Declaratory and Injunctive Relief (the "Amended Complaint"), which seeks vacatur of the Permit.

In the SSAC, Plaintiffs seek relief based on Mosaic's plan to mine in "Area 2," which the Corps has determined is *not* subject to federal jurisdiction under the CWA. The motion should be denied because, (i) it relies on extra-record facts that have no place in this proceeding; (ii) Mosaic is undertaking Area 2 mining because of the exigent circumstances created by the now-vacated injunction and the current 90-day stay, and, regardless, the Corps considered all factors pertinent to Area 2 as part of its alternatives analysis; (iii) Plaintiffs are improperly attempting to shoehorn a CWA citizen suit challenge to Area 2 mining into this APA proceeding; (iv) the amendment is futile; and (v) allowing the amendment would be unduly prejudicial to Mosaic and the Corps.

**I.  PLAINTIFFS' REQUEST TO AMEND WITH ALLEGATIONS CONCERNING AREA 2 MINING SHOULD BE DENIED.**

As set forth in Mosaic's Notice of Area 2 Mining (the "Notice"), Mosaic has identified approximately 700 upland acres within Area 2 at the South Fort Meade Hardee County Extension ("SFM-HC"), or approximately 98% of the Area 2 lands, which can be mined without any impact to jurisdictional wetlands. Notice at 2. Mosaic consulted with the

2

Corps, which has no objection to Mosaic's mining of Area 2 under the conditions that Mosaic has committed to follow. *Id*. at 2-3.

Plaintiffs' SSAC purports to bolster their CWA claims based on "new events that have occurred since the filing of the Amended Complaint regarding [Mosaic's] plans to mine the 700-acre 'Area-2' uplands portion of the South Fort Meade site." SSAC at 2. Based on these "new events," the SSAC seeks to add a claim under the National Environmental Protection Act ("NEPA") that "the Corps must prepare a supplemental Environmental Assessment in light of that development." *Id*. Plaintiffs' summary judgment motion expressly relies on the Area 2 mining to argue that the Corps, (i) failed to perform an adequate alternatives analysis, and (ii) should be required to perform a new Environmental Assessment ("EA") for the Permit. Plaintiffs' Motion for Summary Judgment ("SJ Motion") at 48-50. Plaintiffs' justifications for the requested amendment do not survive scrutiny.

### A.   Amendment is Futile Because Plaintiffs' Proposed Claim Based on Area 2 Mining Is Based on Facts Outside the Administrative Record.

Rule 15(a) of the Federal Rules of Civil Procedure requires leave of court or the adverse party's consent to amend a pleading once a responsive pleading has been served. Although leave to amend must be "freely given when justice so requires," *Foman v. Davis*, 371 U.S. 178, 182 (1962), the court properly should deny amendment for, among other things, "futility of the amendment." *Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (citation and internal quotations omitted); *accord, Laurie v. Ala. Ct. of Crim. Appeals,* 256 F.3d 1266, 1274 (11th Cir. 2001). Here, the proposed amendment would indeed be futile, because the SSAC would be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure or subject to summary judgment.

### 1. The proposed amendment is improperly based on extra-record facts and events.

Judicial review of an administrative agency's action focuses on the "administrative record already in existence, not some new record made initially before the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Consequently, this Court's role is to apply the APA's narrow standard of review "to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). The Court may not consider extra-record facts to determine whether an administrative decision is subject to vacatur under 5 U.S.C. § 796. *P.E.A.C.H. v. U.S. Army Corps of Eng'rs,* 87 F.3d 1242, 1246 n.2 (11th Cir. 1996) (agency should "compil[e] ... complete administrative record ... from all the files of agency staff ..., as long as that record *only* contains documents considered by the staff prior to the agency action") (emphasis added)). *Sw. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443 (9th Cir. 1996).

Nevertheless, Plaintiffs are attempting here to reach outside the record to facts and claims regarding Area 2 uplands only mining that Mosaic is undertaking to mitigate harm to itself, its employees, and the agriculture industry during the pendency of this litigation. It is undisputed that Mosaic's Notice was not filed until April 19, 2011 – over 10 months *after* the Permit was issued. As the Eleventh Circuit has held, "[t]he focal point for judicial review of an administrative agency's action should be the administrative record." *P.E.A.C.H.*, 87 F.3d at 1246. "[W]hile certain circumstances may justify going beyond the administrative record, a court conducting a judicial review is not generally empowered to do so." *Id.* (footnote and

4

internal quotations omitted).[1] Such exceptions are "narrowly construed," however, and the party seeking discovery has "a heavy burden to show that supplementation is necessary." *United States v. Amtreco, Inc.*, 806 F. Supp. 1004, 1006 (M.D. Ga. 1992) (citation omitted). Plaintiffs have not even attempted to carry that burden.

Rather, the facts upon which Plaintiffs rely are not only beyond the administrative record, but also came into existence only *after* the Corps issued its extensive decision, none of the exceptions could conceivably apply, even if Plaintiffs had attempted to invoke them.[2] "[P]ost-decision information" cannot be used "as a new rationalization either for sustaining or attacking" an agency decision. *Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006); *accord Miccosukee Tribe of Indians of Fla. v. U.S.*, 396 F.Supp.2d 1327, 1330-31 (S.D. Fla. 2005) (court rejected plaintiff's request to supplement record on challenge to Corps decision approving plan for protection of an endangered species, which sought to supplement the record with *post-decision* facts as being of "no avail

---

[1] In *P.E.A.C.H.* the court listed four factors identified by the Ninth Circuit as allowing expansion of the administrative record: (i) "an agency's failure to explain its action effectively frustrates judicial review;" (ii) "the agency relied on materials not included in the record;" (iii) "technical terms or complex subjects need be explained;" or (iv) "a strong showing of agency bad faith or improper behavior." *Id.* at 1246 n.1 (citing *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436-37 (9th Cir. 1988)). Although the court did not expressly adopt the exceptions, it found "nothing that would necessitate explaining the court's review beyond the administrative record," and accordingly did not "consider these exceptions as none of them apply in the instant case." 87 F.3d at 1246 & n.1 (footnote omitted). Nor do they here.

[2] Similarly, Plaintiffs' attempt to introduce other extra-record material must be rejected. The report of Richard Weisskoff, Ph.D., submitted as Exhibit A to the SJ Motion, which Plaintiffs claim (albeit without support) was referenced in a May 2010 memorandum, was in fact not attached to the memorandum and thus was not before the Corps, is also improperly submitted extra-record material. *Sierra Club v. U.S. Army Corps of Eng'rs.*, 935 F. Supp. 1556, 1567 (S.D. Ala. 1996) (refusing to consider purported expert affidavit on preliminary injunction, disagreeing with Corps' evaluation of environmental impact). So too is the Third Declaration of Brian H. Winchester, submitted by Plaintiffs in response to Mosaic's notice of its intention to mine Area 2. (DE 120-5).

5

when the [item] did not exist at the time the [Corps'] decision was made").[3]

Moreover, there was no reason for the Corps to have considered Area 2 uplands mining in determining whether to issue the Permit. The mining involves approximately 700 acres of the SFM-HC's 10,000-plus acres to allow for the continued extraction of phosphate solely to maintain some minimal degree of production and keep Mosaic's employees on the payroll during the now-reversed injunction's life and the 90-day stay ordered by the Eleventh Circuit. As a result of the injunction, Mosaic had to temporarily lay off dozens of employees, which caused them significant harm and uncertainty. Furthermore, even with access to the 700 acres of uplands, Mosaic will only be able to operate two of its projected four draglines at SFM-HC, resulting in inefficient and substantially reduced mining activities that will produce significantly less phosphate than contemplated by the Permit's project purpose. It is specious for Plaintiffs now to contend that this limited mining, which has been implemented to mitigate the harm caused by Mosaic's inability to mine under the Permit, constitutes "new" facts that the Corps either should have considered in its CWA alternatives analysis or that it should be required to consider in a supplemental Environmental Assessment.

---

[3] The court rejected Plaintiffs' argument that "extra-record information may be considered by a reviewing court, where such information takes the form of newly discovered evidence that undermines the soundness of the agency's decision." *Id.* at 1331-32. "[O]nly when the administrative record is so inadequate as to prevent a reviewing court from effectively determining whether the agency considered all environmental consequences of its proposed action" may the court "conduct plenary review," and consider extra-record facts on a NEPA challenge to agency action. *Id.* at 1332-33 (citation omitted).

### 2. Area 2 mining is consistent with the Corps' alternatives analysis.

Even assuming, *arguendo*, that Area 2 uplands only mining was properly before the Court, it is completely consistent with the alternatives considered by the Corps. Allowing the amendment would thus be futile.

The Corps engaged in an extensive evaluation under Section 404(b) Guidelines, which require it to determine that there are no "practicable alternatives" to the proposed discharge that would have a less adverse effect on the aquatic environment. 40 C.F.R. §230.10. An alternative is only "practicable" if it is "available and capable of being done after taking into consideration cost, existing technology, and logistics in light of overall project purpose." 40 C.F.R. §230.10(a)(2). The Corps analyzed five on-site alternatives before choosing the least environmentally damaging practicable alternative.

One of the five alternatives the Corps considered, the 4,604-acre Crossing Only Modified No Action Alternative (the "Crossing Only Alternative"), involved crossing jurisdictional areas to access upland areas for mining and included *all* of Area 2, and more. See Map C-30; AR 178850. Nevertheless, this alternative was rejected by the Corps for failure to meet the project purpose. EA at 27-29; AR 216905-216907.[4]

Plaintiffs wrongly claim "Mosaic's assertion that it can now mine 700 additional acres without impacting wetlands renders the EA's alternatives analysis outdated and

---

[4] The Corps defined the project purpose s "extract[ing] phosphate ore from reserves located within a practicable pumping distance of the existing [Mosaic] … plant and supporting infrastructure in order to continue operation … at historical production rates." EA at 6; AR 216884. The Corps concluded that the No Action Alternative was not practicable because it would limit mining to 1033 upland acres leaving 46 million tons of phosphate reserves unmined and would end after two years of mining. EA at 28; AR 216906. The Crossing Only Alternative would only allow recovery of 31% of the phosphate ore on the SFM-HC and created concerns regarding storing of clay. *Id.*

invalid" (Plaintiffs' Motion at 7). The Corps' evaluation of practicable alternatives was properly based on the potential impacts and potential recoverable reserves of the alternatives considered. First, as set forth above, Area 2 is, in fact, included in the 4,604 acre Crossing Only Alternative. See Map C-30; AR 178850. Thus, the Corps considered Area 2's 700 available acres in its alternatives analysis. The Corps appropriately concluded that the Crossing Only Alternative did not meet the project purpose because the 4,604 acres available for mining was deemed inadequate. Obviously, if 4,604 acres are impracticable, then the 700 acre subset of this land that is Area 2 is also clearly impracticable as well. Thus, contrary to Plaintiffs' unsupported assumptions, the additional 700 acres is a ***not*** a "significant change" that renders the alternatives analysis invalid.[5]

### 3. The proposed amendment is an improper attempt to inject a CWA citizen suit into this APA action.

Plaintiffs proposed amendment also must fail because, among other things, Plaintiffs cannot carry their burden of proof under the CWA of establishing, (i) a prohibited discharge of a pollutant from a point source into the waters of the United States without a permit, 33 U.S.C. § 1321; and (ii) that they complied with the procedural requirements of the citizen enforcement provision. 33 U.S.C. § 1365(a)(1). To the extent Plaintiffs had a valid argument regarding Area 2 mining, such claims could still not be brought in this APA action for four reasons: (i) there is no "final agency action" to be reviewed under the APA; (ii) CWA claims must be brought in original actions; (iii) an original action would be premature; and (iv) their disguised claim is meritless.

---

[5] Nor does Area 2 mining undermine the Corps' practicable alternatives analysis because the mining will not result in impacts to regulated resources.

**No final agency action.** Plaintiffs' central contention is that the Corps is required to "prepare a supplemental EIS or EA to analyze Mosaic's Notice of Area 2 Mining," and that "[t]he Corps' failure to do so constitutes agency action that is unlawfully withheld or unreasonably delayed." SSAC at ¶104; SJ Motion at 50. Notably, Plaintiffs have not asked the Corps to do anything, nor does the Corps have any enforceable duty to do anything. Agency "inaction" is usually unreviewable because action that is "committed to agency discretion by law" is exempt from review under the APA. 5 U.S.C. § 701(a)(2). *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (inaction unreviewable because "the court would have no meaningful standard against which to judge the agency's exercise of discretion"). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original); *accord Fla. Pub. Interest Research Groups Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1080 n.15 (11th Cir. 2004). "A 'failure to act' is not the same thing as a 'denial.'" *Id.* at 63.[6] "[B]ecause the 'final agency action' requirement implicates federal subject matter jurisdiction," this Court cannot adjudicate the purported claim on summary judgment and would be obligated to dismiss it. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1240 (11th Cir. 2003) (citations omitted); *accord Davis v. Jackson*, 2010 WL 2431952, *2-3 (M.D. Fla. June 16, 2010).

---

[6] There are three narrow exceptions: (i) "when administrative inaction has precisely the same impact on the rights of the parties as denial of relief," such that "the court can undertake review as though the agency had denied the requested relief and can order an agency to either act or provide a reasonable explanation for its failure to act"; (ii) when "agency inaction … represent[s] agency recalcitrance … in the face of clear statutory duty … of such magnitude that it amounts to an abdication of statutory responsibility"; and (iii) when "agency inaction … work[s] an unreasonable delay of final action." *Sierra Club v. Thomas*, 828 F.2d 783, 793-94 (D.C. Cir. 1987) (footnotes and internal quotations omitted). No such inaction is alleged here. SSAC at ¶104.

**Original action required.**  If Plaintiffs believe that either the Corps or Mosaic is violating the CWA in mining Area 2, that would require a separate lawsuit**.**  CWA citizen suit actions may not be brought under the APA.  *See Save Our Cmty. v. U.S. E.P.A.*, 971 F.2d 1155, 1161 n.11 (5th Cir. 1992) (plaintiff bringing action under CWA must satisfy "constitutional standing analysis, as opposed to a statutory analysis under the APA").  Conversely, the Corps' "performance of its CWA duties" is governed by the APA, not by citizen suit requirements.  *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1363 n.6 (11th Cir. 2008).  Thus, in an action bringing both CWA citizen suit and APA claims, a district court would be required to establish appropriate procedures for going forward on summary judgment disposition of the APA claims, while also affording the defendant an opportunity to fully challenge the citizen suit claims by, for example, requiring that the plaintiff demonstrate constitutional standing and plead a cause of action upon which relief may be granted.  Here, however, Plaintiffs seek to short-circuit the entire process by shoehorning their citizen suit claim into this pending APA action.

**Prematurity.**  The CWA imposes a 60-day notice requirement for citizen suits.  33 U.S.C. § 1365(b)(1)(A).  Compliance with the notice requirement is a "mandatory condition precedent to the filing of a citizen suit."  *Nat'l Envtl. Found., Inc. v. ABC Rail Corp.*, 926 F.2d 1096, 1097 (11th Cir. 1991) (emphasis added) (affirming dismissal of CWA complaint for failure to give 60-day notice); *accord Nat'l Parks & Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 502 F.3d 1316, 1329-30 (11th Cir. 2007) (affirming dismissal of CWA claim because pre-suit notice was inadequate).  Plaintiffs' failure to give notice dooms their claim.

**Meritless claim.** A *prima facie* case of a CWA violation requires a showing of pollutant discharge, *e.g.,* dredged material and fill material, from a "point source" into jurisdictional wetlands without a Section 404 permit. *E.g., United States v. Schallom*, 998 F. 2d 196, 198 (4th Cir. 1993); *United States v. Lambert*, 915 F.Supp. 797, 802 (S.D. W. Va. 1996). Plaintiffs cannot establish a prima facie case, because Mosaic's activities will not result in discharge of dredged or fill material under 33 U.S.C. § 1344.

### 4. The proposed amendment fails to state a NEPA claim.

Plaintiffs argue that Mosaic's ability to mine Area 2's 700 acres – again, as compelled by exigent circumstances – demonstrates that the Corps failed to take the required "hard look" at reasonable alternatives under NEPA. Plaintiffs' Motion at 5-9; SJ Motion at 48-50. That contention is without merit.

An agency meets its "hard look" requirement if it has examined the relevant data and articulated a satisfactory explanation for its action including a "rational connection between the facts found and choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983); *Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209, 1216 (11th Cir. 2002). As set forth above, the Corps looked at alternatives, including Area 2's 700 acres, and also clearly took the "hard look" required by NEPA.

**Alternatives analysis.** The Corps is not obligated by 40 C.F.R. § 1508.9(b) to analyze a "no action alternative" in its EA, but rather to discuss a reasonable number of alternatives with the ***reasonable*** range of alternatives. *City of Dallas, Tex. v. Hall*, 562 F.3d 712 (5th Cir. 2009) (EA must discuss alternatives but need not discuss all proposed alternatives); *Gouger v. U.S. Army Corps of Engrs*, 2011 WL 906654 (S.D. Tex. Mar. 15,

11

2011) (regulation does not require Corps to discuss all proposed alternatives in EA). Which "reasonable alternatives" should be considered is entirely within the agency's discretion, and that discretion is governed only by the "rule of reason," in light of the scope and purpose of the project under consideration. *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1541 (11th Cir. 1990). The "rule of reason" governs both "*which* alternatives the agency must discuss, and the *extent* to which it must discuss them." *Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190, 195 (D.C. Cir. 1991) (original emphasis; internal citations omitted).

The Corps did exactly what the law requires by evaluating seven alternatives that would not involve extracting phosphate from the SFM-HC tract. For each of these alternatives, the Corps considered the environmental effects, as well as practicability and feasibility. EA at 19-26; AR 216897-216904. Thus, there is no basis for Plaintiffs' claim that the Corps failed to take a "hard look" before making a final decision because it lacked information regarding Mosaic's ability to access Area 2 – which consists of only 700 acres of the SFM-HC's 10,000-plus acre tract.

### 5. The Court should deny the amendment as futile.

Where a proposed amendment would be "insufficient as a matter of law," a motion to amend should be "denied as futile." *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999); *accord Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1262 (11th Cir. 2004). "Because justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to ... state a claim." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008); *accord Sibley v. Lando,* 437 F.3d 1067, 1073 (11th Cir. 2005) ("denial of leave to amend is justified by futility when the complaint as

amended is … subject to dismissal"). Plaintiffs' purported "new" NEPA claim would be subject either to dismissal or a summary judgment in Mosaic's favor as an improper attempt to go beyond the administrative record in challenging the Permit. Therefore, Plaintiffs' Motion should be denied. *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007); *Sibley,* 437 F.3d at 1073; *Beheer B.V. v. ASAP Installations, LLC,* 2010 WL 2431922, *2 (M.D. Fla. July 10, 2010) (citation and internal quotations omitted).

### B.   Allowing the Proposed Amendment Would Cause Undue Prejudice.

Plaintiffs' attempt to inject new claims into this case at the summary judgment phase is utterly inappropriate. *E.g.*, *S. Grouts & Mortars v. 3M Co.*, 575 F. 3d 1235, 1243 (11th Cir. 2009); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004). This Court, in granting **Plaintiffs' motion** for an expedited briefing schedule, set an accelerated schedule for briefing to enable an expeditious disposition, in accordance with the Eleventh Circuit's plainly stated intention. Amending the complaint contemporaneously with the filing of summary judgment motions – which are the merits showings in APA cases – would necessarily be prejudicial and cause undue delay. This is particularly so because, as set forth above, the proposed claim is *not* properly brought under the APA.

For the same reason that the courts' review in an APA case is limited to the administrative record, discovery is generally inappropriate in APA cases. *E.g. Rosemond v. Napolitano*, 2010 WL 1817393, *1 n.1 (N.D. Fla. May 5, 2010) (citing *P.E.A.C.H.*); *Ala.-Tombigbee Rivers Coal. v. Norton*, 2002 WL 227032, *3 (N.D. Ala. 2002). But Mosaic is entitled to take discovery on any citizen suit CWA claim that Plaintiffs may believe they can bring – on standing as well as on the merits. Plaintiffs cannot circumvent Mosaic's

procedural rights by shoehorning their CWA claim into this APA action, and doing so would plainly be prejudicial to Mosaic. Summary judgment should never be granted where, as here, a defendant would be denied its right to challenge the pleading on which the summary judgment motion is based or to take any discovery at all. See *Jones v. City of Columbus, Ga.* 120 F.3d 248, 253 (11th Cir. 1997) ("party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion") (citations omitted); *Hendricks v. Ramvosk*, 2011 WL 1429646, *5 (M.D. Fla. Apr. 14, 2011) (party opposing summary judgment entitled to opportunity for discovery).

Because the Area 2-based non-APA claims do not arise from the same facts that were before the Corps in determining whether to issue the Permit, and because Plaintiffs can bring separately whatever action might be appropriate to challenge the Area 2 mining, injecting the Area 2-based claims into this APA action by amendment is inappropriate. *See Dyer v. Publix Super Mkts., Inc.,* 2000 WL 374580, *1-2 (M.D. Fla. Apr. 4, 2000) (denying amendment to bring unrelated claims against same defendant into pending action; claims did not "arise out of the same transactions or occurrences" and denial of leave to amend "does not prevent or foreclose any of the plaintiffs involved from pursuing their individual claims").[7]

Particularly because of this case's expedited track, the Court should not be forced into "a position where issues … are being resolved in a piecemeal fashion with no logical conclusion." *Fla. Evergreen Foliage v. E.I. DuPont de Nemours & Co.*, 470 F.3d 1036, 1042 (11th Cir. 2006). "The liberal amendment policy of Rule 15(a) does not countenance 'the old

---

[7] Assuming Plaintiffs could show standing, and upon their compliance with the 60-day notice requirement, 33 U.S.C. § 1365(b), Plaintiffs could bring their Area 2-based challenge in an original action. *E.g.*, *Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, 548 F.3d 986, 989; *St. John's Riverkeeper, Inc. v. Jacksonville Elec. Auth.*, 2010 WL 745494, *3 (M.D. Fla. Mar. 1, 2010).

sporting theory of justice' or the use of the federal courts as a forum for testing alternate legal theories *seriatim*." *Id.* (citations omitted). Because the proposed amendment "would [be] futile, cause[] undue delay and expense, and result[] in unfair prejudice" to Mosaic, Plaintiffs' Motion should be denied. *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999).

## II. PLAINTIFF'S REQUEST TO SUPPLEMENT THE AMENDED COMPLAINT SHOULD BE DENIED.

Rule 15(d) of the Federal Rules of Civil Procedure empowers a court, "on just terms," to "permit a party to serve a supplemental pleading setting out a transaction, occurrence or event that happened after the date of the pleading to be supplemented." "[A]n amended complaint supersedes an original complaint," *Malowney v. Fed. Collection Dep. Group*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) (citation omitted), such that "the original pleading is abandoned by the amendment, and is no longer part of the pleader's averments against his adversary." *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (citations omitted); *accord Feldcamp v. Long Bay Partners, LLC*, 2010 WL 3610452, *7 (M.D. Fla. Sept. 14, 2010). Supplementation, on the other hand, "is an appropriate vehicle by which to set forth new facts in order to update the earlier pleading." *Lussier v. Dugger*, 904 F.2d 661, 670 (11th Cir. 1990) (citation omitted).

But Rule 15(d) "does not and cannot overrule a substantive requirement or restriction contained in a statute." *Harris v. Garner*, 216 F.3d 970, 984 (11th Cir. 2000) (*en banc*). Notwithstanding the "liberal allowance of amendments or supplements to the pleading under Rule 15," when "the change in the facts which the amendment or supplement … seeks to

15

bring to the court's attention is irrelevant under governing law," there is no discretion to exercise in the first instance. *Harris*, 216 F.3d at 984.

Particularly where, as here, a new cause of action with which a party seeks to supplement its complaint can be raised in another action, it is not an abuse of discretion to deny supplementation, any more than it is to deny a similar request in the guise of an amendment. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1228 (11th Cir. 2008); *Cason v. Sekinger*, 231 F.3d 777, 778 (11th Cir. 2000). A supplemental pleading should not be allowed "when the matters alleged in a supplemental pleading could be the subject of a separate action." 6A FED. PRAC. & PROC. CIV. § 1509 (3d ed. 2010) (footnote omitted).

Rule 15(d) thus "cannot be used to introduce a separate, distinct and new cause of action." *Planned Parenthood of S. Ariz. v. Nelly*, 130 F.3d 400, 402 (9th Cir. 1997) (citations and internal quotations omitted). It is only when a new claim for relief presents a question within the scope of the pending action that a court should consider allowing supplementation, *i.e.*, the question should be "whether the entire controversy between the parties could be settled in one action." 6A FED. PRAC. & PROC. CIV. § 1506 (3d ed. 2010). Here, this Court is proceeding under the Eleventh Circuit's mandate to review Plaintiffs' APA claim under the stringent APA review standard – and an independent non-APA claim cannot conceivably be resolved in the summary judgment proceedings contemplated by the Eleventh Circuit.

[ATTORNEY SIGNATURE APPEARS ON FOLLOWING PAGE]

Respectfully submitted,

*/s/ David B. Weinstein*
David B. Weinstein
Fla. Bar No. 604410
weinsteind@gtlaw.com
Kerri L. Barsh
Fla. Bar No. 443840
Kimberly S. Mello
Fla. Bar No. 002968
mellok@gtlaw.com
**GREENBERG TRAURIG, P.A.**
625 E. Twiggs St., Ste. 100
Tampa, FL  33602
Telephone: (813) 318-5700
Facsimile:  (813) 318-5900

Frank E. Matthews
Fla. Bar No. 328812
frankm@hgslaw.com
**HOPPING GREEN & SAMS, P.A.**
123 South Calhoun Street
P.O. Box 6526
Tallahassee, Florida 32314-6526
Telephone: (850) 222-7500
Facsimile: (850) 224-8551

*Counsel for Mosaic Fertilizer, LLC*

## CERTIFICATE OF SERVICE

I certify that on 12 May 2011, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ David B. Weinstein*
Attorney

*TPA 511544502*