# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| SIERRA CLUB, INC.; PEOPLE FOR PROTECTING THE PEACE RIVER, INC.; and MANASOTA-88, INC.,    ) ) ) )<br><br>Plaintiffs,    )<br>   )<br>v.    )<br>   )<br>UNITED STATES ARMY CORPS OF ENGINEERS; and COLONEL ALFRED A. PANTANO, JR.,    ) ) )<br>   )<br>Defendants,    )<br>   )<br>and    )<br>   )<br>MOSAIC FERTILIZER, LLC,    )<br>   )<br>Defendant-Intervenor.    )<br>   ) | Case No. 3:10-cv-00564-HLA-JB |

## PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' AND MOSAIC FERTILIZER LLC'S CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Eric E. Huber
*Pro Hac Vice* (Colo. Bar no. 40664)
Sierra Club
1650 38th Street Suite 102W
Boulder, CO 80301
(303) 449-5595
fax (303) 449-6520

Marcy I. LaHart, Esq.
Fla. Bar no. 0967009
4804 SW 45th Street
Gainesville, FL 32608
(352) 224-5699
fax (888) 400-1464

ATTORNEYS FOR PLAINTIFFS

## <u>TABLE OF CONTENTS</u>

Table of Authorities……………………………………………………………………...i

INTRODUCTION…………………………………………………………………….....1

ARGUMENT…………………………………………………………………………....1

A.    The Corps' Alternatives Analysis Violated the CWA Regulations and
      was Arbitrary and Capricious……………………………………………………....1

B.    The Corps' Definition of Purpose Unduly Limited Consideration of Alternatives………..6

C.    The Corps Violated its Duty to Independently Evaluate and
      Verify Mosaic's Information………………………………………………..……..8

D.    The Corps' Decisions to not Hold any Public Hearing and
      not Allow Comment on the FONSI were Arbitrary and Capricious………………..…...11

E.    The Corps' Finding of No Significant Impact was Arbitrary and Capricious………….....13

      1.    The Corps' Argument that Mitigation Measures Would Render all
            Impacts Insignificant was Arbitrary and Capricious……………………………..13

      2.    The Project Meets Several of the Significance Factors………………………….15

            a.    The Project will have Cumulatively Significant Environmental
                  Impacts………………………………………………………………..…16

            b.    The Project is Highly Controversial………………………..…………….17

            c.    Several Other Significance Factors are met………………….………..18

F.    Mosaic's Notice of Area 2 Mining Requires a Supplement to the EA………………….19

CONCLUSION……………………………………………………………………….......20

Certificate of Service

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Citizens Against Burlington v. Busey*, 938 F.2d 190 (D.C.Cir. 1991)…………………….....6, 7

*City of Carmel by the Sea v. U.S. Dep't of Transportation*, 123 F.3d 1142 (9th Cir. 1997)………6

*City Of Oxford, Ga. v. F.A.A.*, 428 F.3d 1346 (11th Cir. 2005)……………………………… 4, 12

*Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215 (5th Cir. 2006)…………………………17

*Fina Oil and Chemical Co. v. Norton*, 332 F.3d 672 (D.C. Cir. 2003)……………………………13

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993)……………………………………………8

*Friends of the Payette v. Horseshoe Bend Hydroelectric Co.*, 988 F.2d 989 (9th Cir. 1993)…...11

*Fund for Animals v. Norton*, 281 F. Supp. 2d 209 (D.D.C. 2003)…………………………………15

*Fund for Animals, Inc. v. Rice*, 85 F.3d 535 (11th Cir. 1996)…………………………………...11

*Georgia River Network v. U.S. Army Corps of Engineers*,
334 F. Supp. 2d 1329 (N.D. Ga. 2003)……………………………………………………………17

*Grand Canyon Trust v. F.A.A.*, 290 F.3d 339 (D.C. Cir. 2002)……………………………………18

*Greater Yellowstone Coalition v. Flowers*, 359 F.3d 1257 (10th Cir. 2004)…………………2, 9

*Hill v. Boy*, 144 F.3d 1446 (11th Cir. 1998)……………………………………………………… 13

*Humane Soc'y. of U.S. v. Locke*, 626 F.3d 1040 (9th Cir. 2010)…………………………………...17

*Idaho Sporting Congress, Inc., v. Alexander*, 222 F.3d 562 (9th Cir. 2000)……………………19

*Inland Empire Pub. Lands Council v. United States Forest Serv.*,
88 F.3d 754 (9th Cir.1996)………………………………………………………………………..5

*Makua v. Rumsfeld*, 163 F.Supp.2d 1202 (D.Haw. 2001)…………………………………………18

*Marsh v. Oregon Natural Res. Council*, 490 U.S. 360 (1989)…………………………………… 19

*McDonnell Douglas Corp. v. U.S. Dept. of the Air Force*, 375 F.3d 1182 (D.C. Cir. 2004)……12

*Miccosukee Tribe of Indians v. U.S.*, 566 F.3d 1257 (11th Cir. 2009)……………………………1

*Motor Vehicle Mfr's Ass'n v. State Farm Mutual Auto. Ins. Co.*,
463 U.S. 29 (1983)…………………………………………………………………...4, 12, 13, 14, 19

*Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800 (9th Cir. 1999)…………………6

*Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722 (9th Cir. 2001)…………….......15, 17

*Nat'l Wildlife Federation v. Marsh*, 721 F.2d 767 (11th Cir. 1983)………………………………19

*Natural Res. Def. Council v. U.S. Forest Service*,  421 F.3d 797 (9th Cir. 2005)………………...5

*Port of Jacksonville Maritime Ad Hoc Committee, Inc. v. U.S. Coast Guard*,
788 F.2d 705 (11th Cir. 1986)…………………………………………………………………… 1

*Pub. Citizen v. Dep't of Transp.*, 316 F.3d 1002 (9th Cir. 2003)………………………………...15

*Puna Speaks v. Hodel*, 562 F.Supp. 82 (D.Haw. 1983)…………………………………………15

*Robertson v. Methow Valley Citizens Council*, 490 U.S. 332 (1989)……………………………20

*Scott v. City of Hammond, Ind.*, 741 F.2d 992 (7th Cir.1984)……………………………………4

*Sierra Club v. Bosworth*, 465 F.Supp. 2d 931 (D.Cal. 2006)……………………………………19

*Sierra Club v. Leavitt*, 488 F.3d 904 (11th Cir. 2007)……………………………………………5

*Sierra Club v. Martin*, 168 F.3d 1 (11th Cir. 1999)……………………………………...4, 12

*Sierra Club v. Van Antwerp*, 362 F.App'x. 100 (11th Cir. 2010)…………………………………1

*Sierra Club v. Van Antwerp*, 526 F.3d 1353 (11th Cir. 2008)……………………………………7, 9

*Sierra Club v. Van Antwerp*, 709 F.Supp.2d 1254  (S.D. Fla. Jan. 30, 2009)……………...1, 8, 10

*Sierra Club v. Van Antwerp*, 719 F. Supp.2d 58, 68 (D.D.C. 2010)……………………….... 5, 9, 15

*Simmons v. Block*, 782 F.2d 1545 (11th Cir. 1986)……………………………………1, 11, 12

*Simmons v. U.S. Army Corps of Engineers*, 120 F.3d 664 (7th Cir. 1997)…………………….....5, 6

*Sylvester v. U.S. Army Corps of Engineers*, 882 F.2d 407 (9th Cir. 1989)………………………..8

*Thomas Jefferson University v. Shalala*, 512 U.S. 504 (1994)…………………………………...13

*Town of Cave Creek v. Federal Aviation Administration*, 325 F.3d 320 (D.C.Cir. 2003)……… 17

*United States v. Akzo Coatings of America, Inc.,* 949 F.2d 1409 (6th Cir.1991)…………………5

*Utahns for Better Transp. v. U.S. Dept of Transp.*, 305 F.3d 1152 (10th Cir. 2002)……………..9

*Van Abbema v. Fornell*, 807 F.2d 633 (7th Cir. 1986)……………………………………………9

*WildEarth Guardians v. Salazar*, 741 F. Supp. 2d 89 (D.D.C. 2010)…………………………...12

*Wilderness Watch & Pub. Employees for Envtl. Responsibility v. Mainella*,
375 F.3d 1085 (11th Cir. 2004)……………………………………………………………………19

**STATUTES**

5 U.S.C. § 706(1)…………………………………………………………………………...20

5 U.S.C. § 706(2)(A)…...……………………………………………………………………1, 20

33 U.S.C. § 1344(a)…………………………………………………………………………... 11

**REGULATIONS**

33 C.F.R. § 325……………………………………………………………………………………8

33 C.F.R. § 327…………………………………………………………………………………11

33 C.F.R. § 327.4(b)…………………………………………………………………………… 11

40 C.F.R. § 230.10(a)………………………………………………………………………1, 10

40 C.F.R. §230.10(a)(2)………………………………………………………………………...4

40 C.F.R. § 230.10(a)(3)………………………………………………………………………...5

40 C.F.R. § 1501.4(e)(2)(i)…………………………………………………………………… 13

40 C.F.R. § 1502.9……………………………………………………………………………… 19

40 C.F.R. § 1502.13…………………………………………………………………………......7

40 C.F.R. § 1502.14……………………………………………………………………………. 6

40 C.F.R. § 1502.14(d)………………………………………………………………………... 6

40 C.F.R. § 1503.4………………………………………………………………………...……4

40 C.F.R. § 1506.1………………………………………………………………………………20

40 C.F.R. § 1506.5(a)………………………………………………………………....8, 10

40 C.F.R. § 1508.7………………………………………………………………………16

40 C.F.R. § 1508.25(a)…………………………………………………………………16

40 C.F.R. § 1508.27……………………………………………………………………....18

40 C.F.R. § 1508.27(b)………………………………………………………………… 15

40 C.F.R. § 1508.27(b)(2)………………………………………………………………19

40 C.F.R. § 1508.27(b)(3)………………………………………………………………18

40 C.F.R. § 1508.27(b)(4)……………………………………………………………14, 17

40 C.F.R. § 1508.27(b)(7)………………………………………………………………16

40 C.F.R. § 1508.27(b)(9)………………………………………………………………18

## MISCELLANEOUS

46 Fed. Reg. 18026……..………………………………………………………………… 6

## INTRODUCTION

The Corps and Mosaic take the position that any finding against the Corps would constitute a failure to accord deference to the Corps' decision. While the Court's review is exceedingly deferential, it "may however, find an agency action 'arbitrary and capricious'" under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A). *Miccosukee Tribe of Indians v. U.S.*, 566 F.3d 1257, 1266 (11th Cir. 2009). "In employing [section 706(2)(A)'s] deferential standard of review… a court does not rubber stamp the action of the agency." *Port of Jacksonville Maritime Ad Hoc Committee, Inc. v. U.S. Coast Guard*, 788 F.2d 705, 708 (11th Cir. 1986). An agency's failure to comply with regulations constitutes a violation of the APA's arbitrary and capricious standard. *Simmons v. Block*, 782 F.2d 1545, 1549-1550 (11th Cir. 1986). For example, on remand in *Sierra Club v. Van Antwerp*, 709 F.Supp.2d 1254 (S.D. Fla. Jan. 30, 2009), *aff'd Sierra Club v. Van Antwerp*, 362 F.App'x. 100 (11th Cir. 2010), the district court emphasized that it was applying "deferential review" and found against the Corps for reasons that are applicable here, *e.g.* the Corps' practicable alternatives analysis was insufficient; the purpose and need statement limited the consideration of practicable alternatives; the Corps failed to independently verify the applicant's analysis; and its NEPA analysis was arbitrary and capricious. 709 F.Supp.2d. at 1263-73.

## ARGUMENT

**A.    The Corps' Alternatives Analysis Violated the CWA Regulations and was Arbitrary and Capricious**

Sierra Club's Motion for Summary Judgment ("SC Br." doc. 133) establishes that the Corps violated the Clean Water Act (CWA) regulations, 40 C.F.R. § 230.10(a), and that its findings were arbitrary and capricious, regarding the least damaging practicable alternative and requiring Mosaic to provide "detailed, clear, and convincing information proving that an

1

alternative with less adverse impact is impracticable." *Greater Yellowstone Coalition v. Flowers,* *359 F.3d 1257, 1269 (10th Cir. 2004).* This Court previously reviewed and summarized the EPA's technical comments on this permit and found that they "memorialized the deficiencies" in the Corps analysis. Dkt. 88 at 13-17. Nonetheless Mosaic and the Corps argue Sierra Club exaggerates the significance of the EPA letters and that they alone do not establish CWA violations.  However, Sierra Club's argument is not based on the letters alone. Rather, the EPA letters from 2007 through June, 2010, and especially the EPA economist report of March, 2010, when considered with the entire Administrative Record, including the Corps' Environmental Assessment (EA), Mosaic's MFR-2, the comments by Plaintiffs and the downstream counties, and Mosaic's and the Corps' inadequate responses to the substantial evidence and concerns raised by the EPA letters, all support the conclusion that the Corps' alternatives analysis violated the regulations and was arbitrary, incomplete or erroneous. SC Br. at 15-23.

The Corps claims that it did not choose the alternative with the most wetlands destruction. Federal Defendant's Combined Memorandum ("Fed. Br." doc. 141) at n.3. However, the final document is the EA, which at Table 5 plainly states that Mosaic's alternative would destroy 498.9 acres of wetlands and the Corps' chosen alternative would destroy 534.4 acres of wetlands. AR:2010_06_14_SFM_EASOF_ attachments  (hereafter the "EA") at  27. The Corps also contends that the Corps did not allow mining all of the ore at the site,  Fed. Br. at 17, but the fact remains that the Corps approved Mosaic's request for mining approximately 50mm tons of ore, and the Corps' chosen alternative included the greatest destruction of wetlands and percentage of ore recovery of any of the alternatives considered in the EA. EA at 27-28.

Mosaic contends that the Corps' chosen alternative (2B) was EPA's January, 2010

alternative. Mosaic Fertilizer's Response ("Mosaic Br." doc. 140) at 10-11. As explained in SC

Br. at n.4, that is incorrect and contradicted by the EPA. For example, EPA's January 15, 2010

letter called for preservation of all bayhead wetlands, stating "nor have we received a defensible

justification for why the applicant could not still meet their project purpose without mining

through bayheads." AR: 2010_01_15 EPA Ltr to Corps p. 3. Defendants however admit that they

are preserving only approximately 70% of the bayheads. AR: 2010_03_11 Mosaic response to

EPA letter at 7,10; Corps Br. at 20 (citing AR201560). The EPA also stated that "all impacts to

the Lake Dale stream [should] be avoided, since it is also one of the higher functioning streams

on-site." AR:2010_01_15 EPA Ltr to Corps. But the Corps' permit provides for crossing that

stream and mining that area. *See* Maps C-21, C-26 and C-33,[1] which identify Lake Dale Branch

and the unprotected stream crossing. Also, EPA asked the Corps to "remove cells scheduled for

mining in years 2012 and 2014" and drew these in sections 10 and 11 on the attachment to the

January, 2010 letter, which the Corps' Mine Plan (Map C-16)[2] shows was not done. As EPA

concluded in its last letter on June 8, 2010, its "concerns regarding project purpose and

alternative configurations of the preferred project site, that would result in a reduction of impacts

to waters of the U.S. (minimization) have not been addressed." Addendum to AR Doc.131-1 at 1.

Mosaic further contends that "EPA's concerns were clearly considered."  The Corps did

consider some, but not all. It repeated EPA's 2007 comments in the EA at pp. 11-12. However it

only mentions EPA's January, 2010 letter once, with no discussion or analysis. EA at 27.  There

is no genuine issue that the Corps' EA makes no mention of the EPA June, 2010 comments or

the March, 2010 economist report, nor do any of the Corps' responses to EPA. SC Br. at 20;

AR:2010_06_09 SFM-HC EPA 3c. Thus the record reveals crucial aspects of the EPA comments

---

[1] 2010_06_14 Permit Instrument Att. 1g pdf at pp.1, 25 and 96. Mosaic defended the stream
[2] 2010_06_14 Permit Instrument Attachment 1e at 34.

were ignored, despite the fact that the Corps was required to consider them by 40 C.F.R. § 1503.4, the Corps and EPA Memorandum of Agreement,[3] and NEPA's "hard look" requirement. That renders the agency action arbitrary and capricious. *Motor Vehicle Mfr's Ass'n v. State Farm Mutual Auto. Ins. Co*., 463 U.S. 29, 43 (1983); *City Of Oxford, Ga. v. F.A.A.*, 428 F.3d 1346, 1352 (11th Cir. 2005).

In addition, 40 C.F.R. § 230.10(a)(2) requires consideration of "costs."  But there is no genuine issue of fact that in many cases the Corps rejected alternatives simply because they would cost more, without determining how much more. SC Br. at 16-21. The Corps must give a rational explanation for its action, and finding that any additional cost justifies rejecting an alternative, without determining the amount, renders the requirement that the Corps pick the least damaging "practicable" alternative a nullity. Such readings of the regulations are due no deference and are impermissible. *Sierra Club v. Martin,* 168 F.3d 1, 7 (11th Cir. 1999)("Interpreting a regulation in a manner that robs it of all meaning is unacceptable. *Scott v. City of Hammond, Ind.,* 741 F.2d 992, 998 (7th Cir.1984)* (strong presumption against agency interpretation that renders statute "wholly ineffective").

Mosaic contends the preamble to the CWA regulations excuse it from supplying economic information for the alternatives analysis, but that does not justify withholding information on "costs." Moreover, in this case the "purpose" of the mine is to keep the beneficiation plant open. The profitability of that enterprise was put into issue by Mosaic and information on profit and rate of return is necessarily a component of whether it is "practicable" to meet that purpose. As EPA pointed out, "a list of costs . . . without any idea of how these relate to revenue or other concerns, [says] nothing about practicability or feasibility. This

---

[3] http://www.epa.gov/wetlands/regs/dispmoahtml#5 (August 11, 1992).

analysis is therefore fundamentally incomplete."  Addendum to AR, Doc. 131-1 at 5. The record

is devoid of any such information and the Corps failure to consider it undermines its CWA

analysis. *See Sierra Club v. Van Antwerp*, 719 F. Supp.2d 58, 68 (D.D.C. 2010), where the

Corps' failure to determine the project's "economic feasibility" and "rate of return" rendered its

findings that that other alternatives were *impracticable* contrary to the regulations. This lack of

economic information renders the Corps' NEPA analysis arbitrary and capricious as well.  *See*

*e.g., Natural Res. Def. Council v. U.S. Forest Service,* 421 F.3d 797, 811 (9th Cir. 2005).

It was also arbitrary for the Corps to not consider additional iterative mine configurations

that impacted less wetlands, as EPA called for. For example, Mosaic now claims that it can mine

the "Area 2 uplands," without destroying 16 acres of wetlands in and around that area. [4]  That is

an example of the practicability of mining with a smaller footprint that the Corps did not

consider.  Whereas the Corps' chosen alternative allowed the destruction of 534.4 acres, this is

an economically viable alternative destroying only 518.4 acres. Incredibly, Mosaic argues now

that it is not economically practicable to mine the Area 2 uplands only, while its notice states that

it will do so in mid-June, 2011. Mosaic's action confirms EPA's criticisms, and confirms this

Court's previous finding that contrary to 40 C.F.R. § 230.10(a)(3), Mosaic did not clearly show

all less damaging alternatives were impracticable.  Doc. 88 at 16. The Corps' refusal to consider

such alternatives with incrementally less destruction of wetlands also demonstrates the

---

[4] *See* Mosaic's Notice of Mining Area 2, doc. 118. This constitutes an admission by Mosaic that mining without impacting these 16 acres of wetlands is practicable; and it can be considered as extra-record evidence. *Sierra Club v. Leavitt*, 488 F.3d 904, 916 n. 16 (11th Cir. 2007), *citing Inland Empire Pub. Lands Council v. United States Forest Serv.,* 88 F.3d 754, 760 n. 5 (9th Cir.1996) (ruling that a court reviewing agency action may look beyond the administrative record to determine if the agency examined all relevant factors); *United States v. Akzo Coatings of America, Inc.,* 949 F.2d 1409, 1428 (6th Cir.1991) (same); and doc.142 at pp. 3-4, Sierra Club's Reply to Mosaic's Response to Sierra Club's Motion to Supplement or Amend.

inadequacy of the Corps' NEPA alternatives. *Simmons v. U.S. Army Corps of Engineers,* 120 F.3d 664, 667, 670 (7th Cir. 1997)("The existence of a viable but unexamined alternative renders an environmental impact statement inadequate.").

If, as Mosaic now contends, the Area 2 uplands can be mined without a permit, that shows that the Corps' no-action uplands alternative was incomplete and erroneous as to acreage and ore, since it did not include the Area 2 uplands. Consideration of the "no action" alternative is mandatory "to facilitate reader comparison of the beneficial and adverse impacts of other alternatives to the applicant doing nothing." 40 C.F.R. § 1502.14(d). This "provides a benchmark, enabling decision makers to compare the magnitude of environmental effects of the action alternatives." *Forty Most Asked Questions Concerning CEQ's NEPA Regulations,* 46 Fed. Reg. 18,026, 18,031 (March 23, 1981). Because the Area 2 uplands mining shows the "no action" alternative was not rigorously explored and objectively evaluated, as required by 40 C.F.R. § 1502.14, the Corps' alternatives analysis was fatally flawed.

## B.     The Corps' Definition of Purpose Unduly Limited Consideration of Alternatives

The definition of the purpose of an action is important because it determines the universe of actions that the agency considers. *Citizens Against Burlington v. Busey,* 938 F.2d 190, 196 (D.C.Cir. 1991). [5]  As explained in Sierra Club's opening brief, the plain language of the project purpose provided for the extraction of *all* ore within a practicable pumping distance of the beneficiation plant, in order to continue historical production rates, *indefinitely*. That is accurate because Corps' statement of purpose has no upper limits on the amount of ore to be mined or length of time the plant must be kept open. By definition, that means any alternative that

---

[5]Many courts have overturned Environmental Impact Statements because their purpose and need statements were invalid. *See, e.g., Muckleshoot Indian Tribe v. U.S. Forest Serv.,* 177 F.3d 800, 814 n.7 (9th Cir. 1999); *City of Carmel by the Sea v. U.S. Dep't of Transportation,* 123 F.3d 1142, 1155 (9th Cir. 1997); and *Simmons,* 120 F.3d at 666.

involves the recovery of less ore than the chosen alternative cannot meet the project purpose.

Mosaic and the Corps did not respond directly to Sierra Club's argument. Instead, they argue that the *permit* did not provide for mining all ore from the site, only 64%, and the permit lasts 18 years, not indefinitely. Mosaic Br. at 6-7: Fed. Def. Br. at 16 n.10. Regardless of the alternative chosen in the permit, the definition of the purpose restricted the choice among alternatives and ensured that the alternative with the greatest amount of ore must be chosen. Indeed, that is what happened – the Corps chose the alternative with the greatest percentage of ore recovery and most wetlands destruction. EA p. 27 Table 5. The three alternatives which had less ore (and hence less wetlands destruction since ore exists under the wetlands), were necessarily eliminated. See EA at 27 Table 5 (excluding all alternatives with less ore and impacts because they would not meet project purpose); and rejection of Alternative 2A and the no-action alternative (no. 3) as not meeting project purpose.  EA at 27-28. The definition also excluded three alternatives that would have supplied ore to the plant from off-site, since they were not "within a practicable pumping distance." EA. at 20-22.  Thus, the definition of purpose had the effect of ensuring that only the chosen alternative would accomplish the goals of the agency's action, and the consideration of alternatives was a "foreordained formality." *Citizens Against Burlington*, 938 F.2d at 198.  That is an abuse of discretion. *Sierra Club v. Van Antwerp,* 526 F.3d 1353, 1366-67 (11th Cir. 2008).

Furthermore, NEPA regulations require a statement of purpose and need that is tied to the proposed action. 40 C.F.R. § 1502.13. Here the project purpose did not include using the site for permanent waste disposal or clay settling areas (CSAs). Because the statement of purpose did not include this, the Corps did not consider any alternatives to the CSAs on this site, such as putting the waste on other sites. An applicant cannot define a project in order to preclude the existence of

7

any alternative site and thus make what is practicable appear impracticable. *Sylvester v. U.S. Army Corps of Engineers, 882 F.2d 407, 409 (9th Cir. 1989)*. Plaintiffs raised this issue in our opening brief at 26-27, but neither the Corps nor Mosaic responded to this point. Since that stands unrebutted, Plaintiffs are entitled to summary judgment. *Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993)*.

**C.    The Corps Violated its Duty to Independently Evaluate and Verify Mosaic's Information**

Plaintiffs' opening brief set forth six specific instances where the Corps violated its duty to independently evaluate and verify Mosaic's information, any one of which is grounds to find the Corps violated 33 C.F.R. § 325 and/or 40 C.F.R. § 1506.5(a). SC Br. at 28-30.  The Corps responds with the conclusory statement that its EA was based on "independent review of information provided by Mosaic," with no cites. Fed. Def. Br. at 5.[6]  Mosaic responds with a blunderbuss of cites that do not respond to Plaintiffs' points or in some cases confirms them. Mosaic. Br. at n. 36-39.  For example, Mosaic's Exhibit B is just a list of requests for additional information by the Corps on various topics, not the six instances raised by Plaintiffs. Mosaic's cite to AR216880-83 is the Corps' list of documents on which the EA was based. That does not meet the requirement of that the verification appear "in the record." 33 C.F.R. § 325 App. B(8)(f); *Van Antwerp, 709 F.Supp.2d at 1266*.

Plaintiffs' first and second points were that the Corps did not verify the costs of on-site or off-site alternatives. In response Mosaic cites the EA, AR16897 and AR16907.  However that is the Corps' discussion of alternatives based on Mosaic's MFR-2. It is not a verification of the MFR-2.  Moreover, the MFR-2 just states that there will be increased costs, without giving

---

[6]  The Corps claims to have independently evaluated and analyzed information regarding cumulative impacts and the mitigation plan, Fed. Def. Br. at 9,32; however those two areas are not among the six where Plaintiffs challenged verification.

amounts for the Corps to evaluate or verify. *See e.g.* AR:2010_03_17 SFM MFR Rev 2 (1) at pp. 2-6, 2-7, 2-10 thru 2-13; and 3-11.  Under Mosaic's logic, any amount of increased cost, no matter how small, would justify rejecting alternatives as not practicable, and the Corps accepted that. Thus, the Corps did not satisfy its duty to independently evaluate or verify Mosaic's claims; and that renders its exclusion of alternatives on cost grounds arbitrary and capricious. *Utahns for Better Transp. v. U.S. Dept of Transp.*, 305 F.3d 1152, 1165 (10th Cir. 2002)(agency's NEPA review was inadequate since it had not verified cost estimates); *Simmons* at 669 (finding listing of alternatives with no "cost figures" not sufficient consideration of alternatives on §404 permit); *Van Antwerp*, 719 F.Supp.2d at 71-72 (Corps' failure to verify applicant's cost figures violated CWA regulations and wrongly defined away alternatives from being practicable).

Plaintiffs' third point was that the Corps did not verify Mosaic's 10 mile radius.  Mosaic cites AR216883-84, which confirms that the Corps accepted this based on the "permit review for the Mosaic-Altman Tract," which is not in this administrative record. Mosaic repeats its list of costs on the radius in notes 30-31 of its brief, but as EPA objected, that is just a list of costs and there is no indication the Corps verified them.

Plaintiffs' fourth point was that the Corps did not independently evaluate or verify Mosaic's reports of a positive economic impact, which were questioned by EPA. "[W]hen information submitted by an interested party is specifically and credibly challenged as inaccurate, the Corps has an independent duty to investigate." *Van Antwerp*, 526 F.3d at 1368 (Kravitch, J, concurring part and dissenting in part), *citing Van Abbema v. Fornell*, 807 F.2d 633, 642 (7th Cir. 1986) and *Greater Yellowstone Coalition*, 359 F.3d at 1269.  But the Corps did no investigation here. EPA cited a study by Professor Weisskoff, and Plaintiffs submitted a report by him with their comments, which refuted and concluded the opposite of the reports relied on

by Mosaic. SC Br. at 29. Neither the Corps nor Mosaic addressed the Weisskoff report Sierra Club submitted with their comments.[7]  The Corps did not respond to the EPA economists or mention Weisskoff's conclusions in the EA. Nor did the Corps' EA address Plaintiffs' comments that the positive economic reports were based on the assumption that the land could be re-used, which was erroneous since it would be radioactive. Neither the Corps nor Mosaic mentioned that in their briefs. SC Br. at 29. In addition, the Hardee County (ECONorthwest) report relied on by Mosaic does not verify Mosaic's data since it was based on Mosaic's data. AR:2010_04_21 Revised Section 5_SFM MFR(10) Ex. C-11 pp. 11, 14-17.  *See Van Antwerp, 709 F.Supp.2d at 1265-66 n. 23*, finding the Corps violated the verification requirement by relying exclusively on an economic report submitted by applicants that was based on their data.

Plaintiffs' fifth point was that since Mosaic refused to supply any economic information there was none for the Corps to verify. Mosaic responds that it was not required to submit economic information for the alternatives analysis under the CWA regulation, 40 C.F.R. § 230.10(a).  Mosaic Br. at 12-14.  That misses the mark. Regardless of whether Mosaic was required to submit that information under the *CWA* regulations, the Corps was required to verify Mosaic's claims under the *NEPA* regulations, 40 C.F.R. § 1506.5(a). To comply with NEPA, Mosaic and the Corps stated that the "purpose and need" for this mining was to "continue to utilize the Applicant's investment" in the beneficiation plant. EA at 6. But the Corps did not verify the amount of Mosaic's investment. Mosaic did not submit, and the Corps did not verify, information on whether Mosaic's investment has been recovered or what rate of return is necessary to continue utilizing the plant. Mosaic cites AR201521, but that proves Plaintiffs'

---

[7]  They object to the additional Weisskoff report attached as an exhibit to Plaintiffs' summary judgment brief. The fact that the Corps did not obtain that report demonstrates its lack of investigation. That exhibit is admissible. *See* n. 4 *supra* and Plaintiffs' Response to Federal Defendants' Motion to Strike Extra-Record Materials [doc. 146].

point, since the Corps did not verify Mosaic's claims there that unless SFM-HC is mined the plant would be torn down, that the SFM-HC tract is "too small" to justify a replacement plant, or the cost of such a plant.

Plaintiffs' final point was that the EPA noted that Mosaic's water modeling had not been verified.  The Corps accepted Mosaic's flow conclusions. EA at 53. The Corps discusses a USF model on flow, but no verification of it appears in the record. EA at 54. The Corps makes no mention of the significant contrary evidence and dispute on flow modeling in the record. *See* SC Br. at 38-39, 43; AR:2010_03_19 POW Ltr(1) at 6-7; AR:202455-202542; AR:044927-044933.

**D.    The Corps Decision to not Hold any Public Hearing and not Allow Comment on the FONSI were Arbitrary and Capricious**

The Corps violated the CWA, 33 U.S.C. § 1344(a), its regulations, 33 C.F.R. § 327.4(b), and the APA in its decision to not hold any public hearings.  It is undisputed that there were at least eight requests for public hearings, but despite holding 34 closed-door meetings with Mosaic, no public hearing was ever held.  *See, e.g.*, Fed. Br. at 22. Unlike *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 545 (11th Cir. 1996), there were no public hearings even at the state level. And, unlike the other case relied on by the Corps, *Friends of the Payette v. Horseshoe Bend Hydroelectric Co.*, 988 F.2d 989, 997 (9th Cir. 1993), in this case the agency gave no facts in explanation of its decision to deny the public hearing. The extent of the Corps' explanation was simply to repeat the language of the regulation: "Given that the issues raised by the public have been addressed by the Corps or have been found to be insubstantial, the Corps has determined, per 33 C.F.R. § 327, that there is no valid interest to be served by a public hearing and therefore the requests are denied." EA at 95.  That does not "articulate a satisfactory explanation for [the agency's] action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43; *City Of Oxford, Ga.*, 428 F.3d at 1352. The Court cannot defer to

11

such a conclusory statement. *McDonnell Douglas Corp. v. U.S. Dept. of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004) ("we do not defer to the agency's conclusory or unsupported suppositions") (citing *State Farm*, 463 U.S. at 41); *see also WildEarth Guardians v. Salazar*, 741 F. Supp. 2d 89, 102-03 (D.D.C. 2010) ("[e]ven under the deferential arbitrary and capricious standard of review, a reviewing court 'may not supply a reasoned basis for the agency's action that the agency itself has not given.'") (quoting *State Farm*).

Mosaic argues that the rationality of the Corps' decision is in the evidence in the AR, which shows that the Corps considered comments and held private meetings. Mosaic Br. at 17. However, the Court cannot accept this *post hoc* explanation because the Corps' decision "must be upheld, if at all, on the basis articulated by the agency itself." *State Farm*, 463 U.S. at 50. In *its* decision, the Corps did not explain why the public's concerns were insubstantial or why there was no valid interest to be served by a public hearing. Because there were substantial changes in the project and the development of more information by the Corps in the three years between the initial public notice and the eventual EA/FONSI, there was a considerable amount of new and different information that could have been addressed by the public at a hearing, but the Corps chose to ignore this and deny the public the opportunity to address it.

Defendants argue that the Court must defer to the Corps' decision not to hold a public hearing as a permissible interpretation of its own regulation. Fed. Br. at 22. Here, the Corps' "interpretation" would allow any agency to avoid public hearings by concluding, without any support, that "there is no valid interest to be served by a public hearing." That would render the public meeting requirements meaningless. The Corps is due no deference in such a decision. *Martin*, 168 F.3d at 7; *Simmons*, 782 F.2d at 1549-50; *Fina Oil and Chemical Co. v. Norton*, 332 F.3d 672, 676 (D.C. Cir. 2003)(court will reject agency interpretation that is plainly erroneous or

inconsistent with the regulation); *Thomas Jefferson University v. Shalala,* 512 U.S. 504, 512 (1994) (no deference due agency interpretation that contradicts the regulation's plain language).

Finally, the FONSI violated 40 C.F.R. § 1501.4(e)(2)(i), which requires a public review and comment period before the final decision is made for projects that are "closely similar to one which normally requires the preparation of an [EIS] under the procedures adopted by the agency pursuant to § 1507.3." Mosaic and the Corps argue that the regulations do not specifically list phosphate mines as something normally requiring an EIS, but they did not rebut Sierra Club's proof that the Corps has prepared EISs for nearly all of the past phosphate mines in Central Florida, and that they are closely similar to this one. SC Br. at 35 and Ex. B thereto.

## E.    The Corps' Finding of No Significant Impact was Arbitrary and Capricious

### 1.    The Corps' Argument that Mitigation Measures Would Render all Impacts Insignificant was Arbitrary and Capricious

In this case, the Corps made a finding of no significant impact. However if the Corps "*does* find an impact of true significance, preparation of an EIS can be avoided *only if the agency finds* that changes or safeguards in the project sufficiently reduce the impact to a minimum." *Hill v. Boy,* 144 F.3d 1446, 1450 (11th Cir. 1998) (emphasis added).  If it made such a finding, the Corps would have to explain its decision and make a "rational connection between the facts found and the choice made." *State Farm,* 463 U.S. at 43.

As set forth in Plaintiffs' brief at 46, the EA did not find, let alone explain, that the project would have significant impacts but that mitigation measures would sufficiently reduce those impacts to a minimum.   Instead, the Corps concluded, without any explanation:

> Having reviewed the information provided by the Applicant and all interested parties and an assessment of the environmental impacts, I find that this permit action will not have a significant impact on the quality of the human environment. Therefore, an Environmental Impact Statement will not be required.

EA at 96.

Defendants *now* argue that any impacts from the project would be reduced by the mitigation measures contained in the permit. Mosaic Br. at 31, 35; Fed. Br. at 31. This is an impermissible *post hoc* rationalization. *State Farm,* 463 U.S. at 50. The Court cannot supply a reasoned basis for the agency's action that the agency itself has not given. *Id*. at 43. Even if the agency's intent to find mitigation reduced all impacts below the significance threshold could be somehow be inferred from the text of the EA, it is arbitrary and capricious. The mitigation here did not address all possible significant impacts. For example, the Corps never addressed mitigating the radioactive aftermath of the project. *See* SC Br. at 6, 29.

As for reclamation of the wetlands, Mosaic attempts to portray this as Plaintiffs merely disagreeing with the Corps' conclusion. But the evidence that Mosaic cannot functionally reclaim bayhead wetlands comes not just from Plaintiffs, but from other reputable sources; namely, the EPA, an Administrative Law Judge after a trial on this issue, and three downstream counties that have experienced this type of wetlands loss for decades. SC Br. at 46-47. At the very least, this legitimate body of contrary evidence creates a significant controversy that warrants the preparation of an EIS. *See* 40 C.F.R. § 1508.27(b)(4).

Mosaic does not dispute that it does not have the ability to functionally replace bayhead wetlands, or that reclamation may take decades. Instead, it argues that WRAP, its formula for calculating the amount of mitigation required, factors in uncertainty and time and compensates by adding inferior wetlands. Mosaic Br. at 33-34. Thus, there is no genuine issue that there is uncertainty surrounding restoration of bayhead wetlands, or that reclamation will not occur for decades. In the face of this uncertainty, particularly when taken with the substantial evidence in

the record that the high-quality bayhead wetlands cannot be reclaimed, the Corps should have prepared a full Environmental Impact Statement to analyze these issues.

### 2.     The Project Meets Several of the Significance Factors

Contrary to the arguments of the Corps and Mosaic, the presence of one or more of the significance factors listed in 40 C.F.R. § 1508.27(b) is sufficient to require the preparation of an EIS.  For example, in *Fund for Animals v. Norton*, 281 F. Supp. 2d 209, 235 (D.D.C. 2003), the court found that while some of the significance factors were not met, there was at least a "substantial question" as to at least two of the factors.  It then explained that "the Court adopts the approach of both the Ninth Circuit and several sister courts within this Circuit and finds that the existence of one or more significance factors can justify setting aside a FONSI and remanding either for further consideration of those factors or preparation of an EIS."  *Id;* and *Van Antwerp*, 719 F. Supp. 2d at 64 (if "*any* significant environmental impact *might* result" from an agency's actions, an EIS is required.") (quoting *Grand Canyon Trust v. F.A.A.*, 290 F.3d 339, 340 (D.C. Cir. 2002)).[8] Regardless, the Court need not decide the issue of whether the presence of one significance factor *alone* would require preparation of an EIS because several of the significance factors are met here. SC Br. at 36-46. Rather than repeat those arguments, in the following Sierra Club responds to specific points made by Defendants.

---

[8] *And see Pub. Citizen v. Dep't of Transp.*, 316 F.3d 1002, 1023 (9th Cir. 2003), *rev'd on other grounds*, 541 U.S. 752 (2004) ("If DOT's action is environmentally 'significant' according to *any* of these criteria, then DOT erred in failing to prepare an EIS"), *citing Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 731 (9th Cir. 2001) (abrogated on other grounds) (concluding that an EIS was required by the presence of *each* of two 40 C.F.R. § 1508.27(b) factors- a "high degree of uncertainty and the substantial controversy regarding the effects on the quality of the environment").  Mosaic's only citation to the contrary is *Puna Speaks v. Hodel*, 562 F.Supp. 82, 85 (D.Haw. 1983), but that is no longer good law in light of the more recent Ninth Circuit rulings.  *See, e.g.*, *Nat'l Parks & Conservation Ass'n*, 241 F.3d at 731.

a.      *The Project will have Cumulatively Significant Environmental Impacts*

This project is significant because it "is related to other actions with individually insignificant but cumulatively significant impacts." 40 C.F.R. § 1508.27(b)(7).  Plaintiffs' brief at 37-39 outlines the evidence showing cumulative impacts from previous projects in the Peace River watershed. This project is "related" to them because it is one more in a long chain of phosphate mines in the watershed.

Mosaic acknowledges that the Corps excluded four phosphate mines in the Peace River watershed from its analysis, but argues that this was justified since the mines are slated for after 2028 when South Fort Meade will be reclaimed.  Mosaic Br. at 24. However, this assumes that reclaimed mines fully restore lands to pre-mined condition and make all impacts disappear, which is not the case.  These planned mines are at least "reasonably foreseeable," and thus must be included in the cumulative impacts analysis. 40 C.F.R. § 1508.25(a); 40 C.F.R. § 1508.7.

Mosaic's claim that the Corps "thoroughly evaluated" pre- and post-mining water quality issues is simply not supported by its record citations. Mosaic Br. at 25.  Only its citation to AR216928 actually mentions water quality, which is the EA page 50, and that is only a summary of water quality efforts in the region since 1970 followed by an unsupported conclusion that those efforts "can reasonably be expected to mitigate the historical water quality impacts."  In fact, the Corps relied primarily on the State's § 401 water quality certification, which as a matter of state law does *not* analyze cumulative impacts. Therefore, combining the §401 certification with speculative results of future State programs is not sufficient to support the Corps' finding.

Defendants also argue that the Corps' decision to conduct an Area-Wide EIS on phosphate mining in the Peace River basin has no bearing on the sufficiency of the EA's cumulative impacts analysis, and this EA must be examined in isolation.  However, neither

16

Defendant explains how there can be enough cumulative impacts from these phosphate mines to warrant an Area-Wide EIS but not to warrant an examination in an EIS for South Fort Meade. The three mine applications that triggered the Area-Wide EIS were before the Corps when it approved this permit in June, 2010. Since they were significant enough to require the area-wide EIS when it was announced on June 25, 2010, they were significant enough to require an EIS in the spring of 2010, when this project was being considered.

### b.   The Project is Highly Controversial

The impacts of this project are significant because the effects on the quality of the human environment are likely to be highly controversial." 40 C.F.R. § 1508.27(b)(4). That is, there is at the very least a substantial dispute as to the *effect* of the mine.  *See, e.g. Town of Cave Creek v. Federal Aviation Administration,* 325 F.3d 320, 331 (D.C.Cir. 2003). "A substantial dispute exists when evidence ... casts serious doubt upon the reasonableness of an agency's conclusions." *Nat'l Parks & Conservation Ass'n,* 241 F.3d at 736.  Mosaic asserts that Sierra Club is merely reciting instances of opposition to the project, and the Corps cites cases where courts found no controversies, but each of those involved mere criticism of a project as opposed to contradictory evidence.  *See Humane Soc'y of U.S. v. Locke,* 626 F.3d 1040, 1057 (9th Cir. 2010); *Coliseum Square Ass'n, Inc. v. Jackson,* 465 F.3d 215, 240-41 (5th Cir. 2006); *Georgia River Network v. U.S. Army Corps of Engineers,* 334 F. Supp. 2d 1329, 1338 (N.D. Ga. 2003). Here, by contrast, Sierra Club has cited specific contradictory evidence that casts serious doubts on the Corps' conclusions with respect to its ability to reclaim wetlands, the project's impact on Peace River flows, and the socioeconomic impacts of the project. *See* SC Br. at 41-42. The Corps did not even acknowledge the existence of these disputes, much less analyze them, which renders the EA arbitrary and capricious.  *Georgia River Network,* 334 F. Supp. 2d at 1338.

17

c.       *Several Other Significance Factors are met*

Many other significance factors are met here.  First, the project lies in close proximity to wetlands and ecologically critical areas.  40 C.F.R. § 1508.27(b)(3).  The project would actually destroy over 500 acres of wetlands and ten miles of streams within the ecologically-critical Peace River watershed, an Aquatic Resource of National Significance.  The Corps and Mosaic attempt to diminish this by arguing that this factor *alone* cannot result in a finding of significance and point to cases where FONSIs for § 404 permits were upheld based on mitigation measures offsetting wetlands impacts.  However, this Court is not tasked with evaluating the wetlands impacts in those cases, or deciding whether a *de minimis* exception may apply in some cases.  It is unknown whether any of those projects were on the same scale as South Fort Meade, were located in nationally-important watersheds, or destroyed irreplaceable bayhead wetlands.  In this case, there is no genuine question that this significance factor is satisfied.

Second, the project's impacts are highly uncertain and involve unknown risks.  40 C.F.R. § 1508.27.  As set forth in SC Br. at 44, 46-48 and *supra* at 14-15, and as this Court previously recognized, Mosaic's ability to reclaim wetlands and streams is highly uncertain.

Third, Defendants acknowledge this project "may affect" several endangered species.  This satisfies the significance factor in 40 C.F.R. § 1508.27(b)(9). *See Grand Canyon Trust,* 290 F.3d at 339.[9] Also, Plaintiffs' public comments raised the issue of impact on downstream critical habitat for endangered Sawtooth sawfish. SC Br. at 45. Mosaic tries to explain why the sawfish will not be impacted.  Mosaic Br. at 30.  However, Defendants admit that the EA does not mention the Sawtooth sawfish *at all*.  Mosaic Br., at 30; Fed. Br. at 30.  Counsels' explanation

_____

[9] The no jeopardy finding in the Corps' consultation with the U.S. Fish and Wildlife Service does not mean there is no significant impact, since the ESA and NEPA have different standards. *See e.g. Makua v. Rumsfeld,* 163 F.Supp.2d 1202, 1218 (D.Haw. 2001).

regarding the sawfish impacts is classic *post hoc* rationalization of the agency action, which is prohibited. *Wilderness Watch & Pub. Employees for Envtl. Responsibility v. Mainella,* 375 F.3d 1085, 1094 (11th Cir. 2004)( agency *post hoc* rationale not allowed in NEPA case).

Finally, the Corps finding that there will be no significant impact on public health and safety, 40 C.F.R. § 1508.27(b)(2),  was arbitrary since, for example, it did not analyze at all the post-project radiation impacts, which Plaintiffs raised in their comment letters. SC Br. at 6, 29; AR:2009_11_23 POW Ltr at 6; AR:2010_3_19 POW Ltr(1) at 15.

**F.    Mosaic's Notice of Area 2 Mining Requires a Supplement to the EA**

Under 40 C.F.R. § 1502.9: "Agencies…[s]hall prepare supplements to either draft or final environmental impact statements if: (i) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or (ii) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." The use of the word 'shall" is mandatory. *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 372 (1989); *and see Nat'l Wildlife Federation v. Marsh,* 721 F.2d 767 (11th Cir. 1983)(agency must prepare supplemental EIS for new information or circumstances); *Sierra Club v. Bosworth,* 465 F.Supp. 2d 931 (D.Cal. 2006)(supplementation of NEPA analysis required for ongoing federal action).  This supplementation requirement applies to EAs. *See, e.g., Idaho Sporting Congress, Inc., v. Alexander,* 222 F.3d 562, 566 (9th Cir. 2000).

The EA applies to the entire 10,856 acre mine. EA at 7-8. Mining Area 2 uplands only would change the federal Mine Plan by changing the order of the mining areas; adding a new access corridor; and reconfiguring the ditch and berm system. *See* Doc.130 at 7.  The federal permit will have to be modified. AR:2010_06_14 DA Permit at 4; AR214637. Also, mining the uplands will impact the wetlands in and around Area 2. Winchester Declaration (Dkt. 120-5);

and see Myers Declaration (Dkt. 96-3) at ¶¶ 11-15. If Mosaic were correct that no permit is necessary for mining Area 2 uplands, it would add approximately 70% of acreage (700 acres) and ore to the "no action" alternative, which means that alternative needs to be reconsidered. *See supra*, p. 6.[10]  Meanwhile, the Corps has already acquiesced to Mosaic's new plan. Therefore, its failure to supplement the EA constitutes "agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and is arbitrary and capricious, 5 U.S.C. § 706(2)(A).   NEPA requires review before the action, not after. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). Also see 40 C.F.R. § 1506.1 (limitations on actions during NEPA process).

### CONCLUSION

For the reasons set forth above, in addition to those in Sierra Club's Motion for Summary Judgment [doc. 133], Plaintiffs' Motion  for Summary Judgment should be granted, and the cross-motions for summary judgment of Mosaic and the Corps denied.

<table>
<tr>
<td>

**/s/ Eric E. Huber**
Eric E. Huber
*Pro Hac Vice* (Colo. Bar no. 40664)
Sierra Club
1650 38th Street Suite 102W
Boulder, CO 80301
(303) 449-5595
fax (303) 449-6520

</td>
<td>

**/s/ Marcy I. LaHart**
Marcy I. LaHart, Esq.
Fla. Bar no. 0967009
4804 SW 45th Street
Gainesville, FL 32608
(352) 224-5699
fax (888) 400-1464

ATTORNEYS FOR PLAINTIFFS

</td>
</tr>
</table>

---

[10]  In its supplemental brief [doc. 145-1] Mosaic argues Area 2 uplands only mining was considered under the "stream-crossing only" alternative. However, the Area 2 uplands mining it now proposes does not cross a stream, hence it was not part of that alternative. Also Mosaic relies on  an older, *unapproved* version of Map C-30 at AR 178850, which it prepared.  That is from 2009; and it does not have the Corps' June 10, 2010 date stamp that indicates it is the final approved Map C-30 on which the EA was based and which was incorporated into the permit. The correct final Map C-30 is at AR215061. That excludes the stream-crossing only alternative, while showing that none of the 700 acres of uplands in Area 2 are within the Corps' 1,033 no-action uplands that can be mined without a permit.  See doc.143-1.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 31st day of May, 2010, I electronically filed the foregoing by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.


Respectfully submitted,

**/s/ Eric E. Huber**
Eric E. Huber