**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| SIERRA CLUB, INC.; PEOPLE FOR PROTECTING THE PEACE RIVER, INC.; and MANASOTA-88, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS; and COLONEL ALFRED A. PANTANO, JR., <br><br> Defendants. <br><br> and <br><br> MOSAIC FERTILIZER, LLC, <br><br> Defendant-Intervenor. | Case No. 3:10-cv-00564-HLA-JBT |

**FEDERAL DEFENDANTS' BRIEF IN RESPONSE TO**
**THE COURT'S ORDER REGARDING "AREA 2"**

The United States files this response to the Court's June 17, 2011 order directing the parties to explain "whether the Corps considered so-called 'Area 2' in its alternatives analysis prior to issuing the relevant permit." ECF No. 154 at 1.[1] The Corps considered Area 2 in its alternatives analysis, as demonstrated throughout the agency's administrative record, including in the Environmental Assessment's discussion of on-site alternatives (AR216904-07), in a map verifying that Area 2 falls within the "Stream-Crossing-Only Modified No Action" Alternative (AR178850), and elsewhere. *See, e.g.,* AR201561, AR213752, AR201550, and AR201558-59.

---

[1] The Corps consulted with Sierra Club and Mosaic in an effort to file a joint response. The parties were not able to reach an agreement on the content of a joint response.

1

I.   **The Corps Considered Area 2 in Connection with its "Stream-Crossings-Only Modified No Action" Alternative**

All 700 acres of Area 2 fall within the footprint of the "Stream-Crossings-Only Modified No Action" alternative (also "On-Site Alternative #4").[2] AR216904-07, AR178850. That alternative would have authorized temporary impacts to waters of the United States in order for Mosaic to access and mine 4,604 acres of uplands, including all of Area 2. But the Corps concluded that On-Site Alternative #4 was not practicable from a cost or a logistical perspective, and that it failed to satisfy the overall project purpose.[3] Inclusion of Area-2 in On-Site Alternative #4 shows that the Corps "considered . . . Area 2 in its alternatives analysis prior to issuing" the permit. ECF No. 154 at 1.

II.  **Inclusion of Area 2 in On-Site Alternative #4 Satisfied NEPA**

The National Environmental Policy Act applies only to "proposals" for "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Here, as proposed, Area 2 uplands-only mining is outside of the Corps' Clean Water Act

---

[2] Stream Crossings in this context refers to where Mosaic would move draglines or install pipelines across a stream in order to access another portion of the Site. The U.S. Environmental Protection Agency expressed interest in minimizing stream crossings. *See, e.g.,* AR196792-98 (EPA's January 15, 2010 letter suggesting that the Corps minimize stream crossings); AR196772 (Meeting with EPA).

[3] On-Site Alternative #4 would not provide sufficient contiguous upland area to construct a clay-settling area, which is necessary to contain the clay generated by mining. AR216906, AR201561, AR178850. Further, Mosaic's ability to recover phosphate ore under that alternative would have been limited to the remaining storage capacity of the clay-settling areas on its Polk County mine. The Corps thus concluded that On-Site Alternative #4 would not generate sufficient phosphate ore to satisfy the overall project purpose of continuing operations of the Polk County separation/beneficiation "at historical production rates." AR216904-07. *See also* 40 C.F.R. § 230.10(a)(2) ("alternative is practicable if it is available and capable of being done after taking into consideration cost, existing technology, and logistics in light of overall project purposes."); AR201561, AR213752, AR201550, AR201558-59.

jurisdiction because Mosaic has not proposed to discharge dredged or fill materials into waters of the United States, and Sierra Club has not alleged that Area-2 mining will result in such discharges.[4] *See City of Las Vegas v. FAA*, 570 F.3d 1109, 1117 (9th Cir. 2009) (supplemental NEPA review required only "when the environmental impact is significant or uncertain and the [existing NEPA documentation] is no longer valid"). Here, because Mosaic does not propose to discharge into jurisdictional waters in connection with Area-2 uplands-only mining, there is no ongoing "major Federal action" that could conceivably require NEPA supplementation. *See Norton v. SUWA*, 542 U.S. 55, 73 (2004).

In contrast to Mosaic's notice of Area 2 uplands-only mining, the permit that the Corps issued involved a "major federal action" trigging NEPA. In that context, the Corps considered Area 2 as part of the project that it permitted (AR216904-07, AR213952), and as part of On-Site Alternative #4. AR178850. Sierra Club cites no authority suggesting that the Corps was required to consider Area 2 as a "stand-alone" alternative,[5] instead of including it as part of On-Site Alternative #4. A reasonable alternatives analysis does not require examination of countless divisions of upland areas as separate alternatives. *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 551 (1978) ("Common sense . . . teaches us that the 'detailed statement of alternatives' cannot be found wanting simply because the agency failed to include every alternative device and thought conceivable by the mind of man."). The Corps acted reasonably

---

[4] For this reason and others, the Corps explained in previous filings that it would be improper for this Court to grant relief to Sierra Club on its new Area-2 claim. *See* ECF No. 156 at 3-5; ECF No. 141 at 33-35.

[5] A NEPA alternatives analysis should consider a reasonable range of alternatives; not every speculative or imaginable alternative. *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1541 (11th Cir. 1990). This NEPA standard differs from the Corps' obligation under Section 404(b)(1) Guidelines to permit only the least-environmentally damaging practicable alternative.

when it considered upland areas collectively, and it was not required to assess the countless variations of uplands-only mining on a site spanning nearly 11,000-acres.

There is no merit to the Sierra Club's suggestion that the Corps was required by NEPA to consider the specific "Area 2" uplands-only configuration that Mosaic has proposed. First, Sierra Club fails to recognize that the Corps considered several "no action" alternatives (*i.e.,* purchasing phosphate rock, mining outside of Central Florida, constructing a new or expanding an existing mine in the Central Florida Phosphate District, and On-Site Alternative #3), as required by NEPA. AR216897-907. Second, as discussed above, nothing requires the Corps to analyze the limitless iterations of "no action." *Vermont Yankee*, 435 U.S. at 551. Third, a primary purpose of considering the "no action" alternative is to provide a benchmark (*i.e.,* no impacts to waters of the United States) with which to compare the impacts of other alternatives, *see Custer Cnty. Action Assoc. v. Garvey*, 256 F.3d 1024, 1040 (10th Cir. 2001), and Sierra Club does not even allege that the alternatives analyzed by the Corps were insufficient to provide that benchmark. Finally, as explained above, the Corps considered all portions of Area-2 in its evaluation of On-Site Alternative #4. AR216905-6, AR178850.

**III.    Sierra Club Conflates the Requirements of NEPA and the Clean Water Act in its new Area-2 Claim**

Sierra Club's second supplemental and amended complaint alleges that the Corps must prepare a supplemental environmental assessment to analyze whether the alternatives considered were "reasonable and practicable" in light of Mosaic's decision to mine non-jurisdictional uplands pending final disposition of this case. ECF No. 151 ¶ 104. Determining the least environmentally-damaging *practicable* alternative is the Clean Water Act approach to alternatives, and involves a different legal standard than NEPA. Sierra Club does not allege that

4

the Corps' consideration of Area-2 was legally deficient for Clean Water Act purposes. *See* ECF No. 151 (second supplemental and amended complaint); ECF No. 160 at 2 (clarifying that "Plaintiffs' Area 2 claim is for a NEPA violation, not the CWA").

In any event, as discussed in our summary judgment brief (ECF No. 141 at 13-20), the Corps considered several onsite alternatives that would minimize the footprint of Mosaic's original project proposal. AR216904-07. These onsite alternatives – including the "no action alternative" – would have authorized *more* acreage of mining than Area 2, yet the Corps determined that each was impracticable or not the least-environmentally damaging practicable alternative. It thus stands to reason that "Area 2 Uplands Only Mining," which constitutes a fraction of the minable acres that the Corps considered and rejected as impracticable (because each failed to satisfy the overall project purpose), would also be impracticable.

Respectfully submitted this 5th day of July, 2011,

      IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Joseph Nathanael Watson*
J. NATHANAEL WATSON
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, DC 20044
Phone: (202) 305-0475
Fax: (202) 305-0267
joseph.watson@usdoj.gov

ADAM J. KATZ
Trial Attorney
United States Department of Justice
Environmental Defense Section
P.O. Box 23986
Washington, DC 20026-3986
Phone: (202) 514-2689
Fax: (202) 514-8865
adam.katz@usdoj.gov

Attorneys for Federal Defendants

OF COUNSEL:

Christina D. Storz
United States Army Corps of Engineers

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 5, 2011, the foregoing was electronically filed with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to counsel of record.

      */s/ Joseph Nathanael Watson*

i