FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2011 JUL -8 PM 3:16

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

**SIERRA CLUB**, *et al*,

Plaintiffs,

v. Case No.: **3:10-cv-564-J-25 JBT**

**UNITED STATES ARMY CORPS OF ENGINEERS**, etc., *et al*,

Defendants.

______________________________________/

## PRELIMINARY INJUNCTION

This Cause is before the Court upon Plaintiffs' Motion for Preliminary Injunction (Dkt. 148). The Federal Defendants and Intervenor Mosaic have filed responses to the motion. Replies have also been filed.

As a threshold issue, the Court notes that eleven days after the Eleventh Circuit issued its opinion in this case, Mosaic filed its Notice of Area 2 Uplands Mining (Dkt. 118) based on its position that said mining does not require a Clean Water Act Section 404 permit. Mosaic conceded the relevant area contained federal jurisdictional wetlands, but asserted it would avoid impacts to same.

Plaintiffs partially base their renewed Preliminary Injunction request on this notice.[1]

The Parties do not agree whether this area was previously considered by the Corps prior to permit issuance. Regardless, the relevant alternative was rejected by the Corps.

Plaintiffs note that it is undisputed that the proposed mining in Area 2 requires a change in the access corridors and order of the mining plan.[2]

---

[1] The notice asserted, "[t]he Corps has been consulted regarding Area 2 mining as explained in this Notice and it has indicated that it has no objection to Mosaic proceeding consistent with the Eleventh Circuit's Opinion and in compliance with the terms and conditions of the Permit, with which Mosaic agrees that it will comply." Plaintiffs filed a response to the notice arguing Area 2 is not part of the 1,033 acres of uplands that can be mined without a permit and, *inter alia*, asserting that Area 2 mining would have adverse impacts on adjacent wetlands. As discussed in this Order, Plaintiffs cite Mosaic's own evidence to support the latter assertion.

[2] The Federal Defendants have noted that Area 2 fell within the EA's Stream Crossing Only Modified No Action Alternative/On Site Alternative 4. The Alternative was rejected as not practicable and because it failed to satisfy the overall project purpose. (Dkt. 162)

The Federal Defendants argued that the relevant alternative "would not provide sufficient contiguous upland area to construct clay settling area which is necessary...." The Federal Defendants opined that Area 2 mining would not involve discharges into the waters of the United States and therefore is not an ongoing major federal action [requiring NEPA supplementation]."

However, the proposed Area 2 mining relates to the 2010 permit which is active absent an injunction. The Federal Defendants concede, "the Corps considered Area 2 as part of the project it permitted." Thus, while Area 2 as a standalone mining operation may not be a major federal action, it is part of a previously permitted project and Mosaic's own evidence produced in August of 2010 calls uplands mining into question from an environmental prospective.

Further, it appears to be undisputed that Area 2 as a standalone alternative has not been analyzed. While the Corps may not have been required to examine the exact footprint of Area 2 as a potential alternative prior to permit issuance, Plaintiffs make a compelling argument that Mosaic's Area 2 proposal should be examined as a modification to the overall plan[3] and, further, is evidence that the prior alternatives analysis was incomplete and/or improperly verified.

Accordingly, the Court finds that Mosaic's notice of Area 2 mining alters the course of this very complicated case and, further, due to the new development, finds that a preliminary injunction should issue until this case is decided on the merits. It should be noted again that the Court is well

---

[3] As noted by the Federal Defendants, Sierra Club cites "Special Condition 3" of the permit to support its claim that Area 2 mining would require permit modification.

These Defendants take the position that the "condition provides a list of substantial deviations that may require modification (or result in permit revocation), including 'impacts to wetlands, changes with mitigation, or changes with the reclamation.' AR214637. Sierra Club has not alleged that Mosaic's mining in Area 2 would result in discharges to jurisdictional wetlands, or in any way alter the mitigation or reclamation schedule."

The Court notes, however, that although Mosaic's notice states that Area 2 mining will not result in *discharges* to jurisdictional wetlands, Plaintiff's evidence as well as Mosaic's August 2010 declaration demonstrate that "absent a properly studied plan with an appropriate mitigation design movement of surface water...would not be restored to support the function of the wetlands." (Dkt. 96-3, par. 11). Thus, it appears that Area 2 mining requires a permit modification because it will *impact* jurisdictional wetlands even if there are no *discharges* into these wetlands.

aware that this matter is time sensitive and will expedite its merits ruling accordingly. The Court finds as follows:

1. On June 14, 2010, the U.S. Army Corps of Engineers ("Corps") issued a Clean Water Act Section 404 permit to Mosaic Fertilizer, Inc., authorizing strip mining for phosphate ore on the 10,885-acre "South Fort Meade Extension" site, with impacts to 534 acres of forested and herbaceous wetlands and 10.7 miles of streams feeding the Peace River and Charlotte Harbor watershed.

2. Plaintiffs have demonstrated the likelihood of success on the merits on their claims that the Corps issued the permit in violation of the Clean Water Act (CWA) and National Environmental Policy Act (NEPA) and acted in a manner that was arbitrary, capricious and contrary to law under the Administrative Procedure Act (APA), 5 U.S.C. §706(2)(A):

a) The Corps' alternatives analysis violated the CWA and NEPA regulations and was arbitrary and capricious in that Mosaic did not clearly show less damaging alternatives were impractable;

b) The Corps violated its duty to independently evaluate and verify Mosaic's information;

3. Without preliminary injunctive relief, Plaintiffs and the environment will suffer irreparable harm. The phosphate mining at issue requires Mosaic to strip away vegetation, waterways, wetlands, topsoil, and overburden (the sandy soils that overlay the phosphate deposit) down to the phosphate-containing layer and, further, repair of the excavated wetlands and streams with human-engineered wetlands and streams is controversial.

In addition, Mosaic's own declaration (Myers declaration, Dkt. 96-3),[4] which was submitted in August of 2010 to support its argument that uplands mining is not feasible, indicates that mining uplands will have adverse impacts on wetlands in the project area.

4. The harm is imminent in that, according to its schedule, Mosaic has already cleared a dragline access path to Area 2, built a ditch and berm in a portion of that area, and gave notice that in "early July 2011" its

---

[4] Of note, in his declaration, Mr. Myers also asserted that uplands mining would require additional engineering and that "uplands only mining cannot be commenced in the short-term, and it is uncertain whether it could ever be implemented." (Dkt. 96, p. 9)

Apparently, Mr. Myers has recently modified his position regarding environmental impacts. Mr. Myers now asserts that he previously opined that "there would be a materials imbalance in a *permanent* uplands only mining scenario..." (Dkt. 159-15, par. 9) (emphasis added). As argued by Plaintiffs, Mr. Myers' latest declaration may contradict his earlier position on this issue. Indeed, a section of Mosaic's August 2010 brief was titled, "Mosaic cannot mine uplands in the *short term*." (Dkt. 96, p.7)(emphasis added).

"draglines begin mining Area 2." (Dkt. 118 at 4). Further, it appears the current stay expired on July 7, 2011.

5. The public interest favors the issuance of a preliminary injunction to protect these resources and the natural environment and maintain the status quo until this case can be resolved on the merits. "[M]aintenance of the status quo is the primary purpose of preliminary injunctive relief..." *Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983).

6. There is no harm to the Corps from this preliminary injunction. As to Mosaic, the balance of harm weighs in favor of a preliminary injunction because any harm to Mosaic is largely self-inflicted and Mosaic has had ample time since the beginning of this lawsuit in June of 2010 to modify its federal mine plan and NEPA analysis as well as revise any other state or local permits necessary to go forward.

7. This preliminary injunction is in the public interest because it furthers the congressional purposes in the CWA and NEPA; protects the public interest in the wetlands and streams; and is consistent with the comments of the E.P.A. and three downstream counties that objected to the permit.

8. Plaintiffs are not required to post a bond pursuant to Federal Rule of Civil Procedure 65(c) because it is customary to waive bonds in public interest litigation such as this and Plaintiff does not have a financial interest in the outcome. *Natural Resources Defense Council, Inc. v. Morton*, 337 F. Supp. 167, 168-69 (D.D.C. 1971). Accordingly, it is **ORDERED**:

Plaintiffs' Motion for a Preliminary Injunction (Dkt. 148) is **GRANTED**; Defendants and Mosaic Fertilizer, LLC and all of their agents, officers, employees and attorneys are enjoined from conducting any activities in reliance on Corps permit SAJ-1997-4099, including but not limited to any ground disturbance, excavation, dredging, filling or other alteration of jurisdictional waters of the United States at the South Fort Meade Extension site. This injunction is in effect until the final ruling on the merits.

**DONE AND ORDERED** this 8e day of July 2011.

**HENRY LEE ADAMS, JR.**
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record