## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**SIERRA CLUB, INC.**, **PEOPLE FOR PROTECTING
PEACE RIVER, INC.** and **MANASOTA-88, INC.**,

      Plaintiffs,

v.                                                    Case No. **3:10-cv-564-J-25 JBT**

**UNITED STATES ARMY CORPS OF ENGINEERS**
and **COLONEL ALFRED A. PANTANO, JR.**,

Commanding District Engineer, U.S. Army Corps
of Engineers, Jacksonville District,

      Defendants,

and

**MOSAIC FERTILIZER, LLC**,

      Intervenor Defendant.

_____/

### ORDER

    This Cause is before the Court on Mosaic's Motion to Stay

Preliminary Injunction (Dkt 173).

    Also before the Court is Mosaic's Motion to Strike (Dkt. 163).   In this

motion, Mosaic argues that Plaintiff's expert Brian Winchester is not

qualified to offer opinions on hydrogeology.  Specifically, Mosaic notes that

1

Mr. Winchester stated in his declaration that he is unable to opine on a certain issue regarding recharge systems.

Plaintiffs argue that Mr. Winchester's opinions are admissible because they are based on his thirty-seven years of experience as a Florida ecologist specializing in wetlands hydrology in addition to his first hand observations of conditions at other Mosaic mining sites in the area and his review of Mosaic's own filings.[1]

This Court finds that Mr. Winchester's opinions are admissible at this stage in the litigation regarding the question of whether Area 2 mining will cause adverse impacts to the relevant wetlands; Mosaic's motion is denied.

**Background**

On July 8, 2011, this Court entered a Preliminary Injunction enjoining all activities under the relevant Corps' permit at Mosaic's South Fort Meade Extension Site. (Dkt. 168).

---

[1] As noted by the Court in its 2011 Preliminary Injunction, Mr. Myers, Mosaic's Assistant Vice President, stated in his 2010 declaration that uplands only mining results in a materials imbalance, potentially affecting restoration of the adjacent wetlands. Sierra Club's Mr. Winchester used this statement to support his opinion that the proposed uplands only mining will result in a situation where reclaimed uplands will be lower than the adjacent wetlands.

In its Order, the Court noted that eleven days after the Eleventh Circuit panel issued its opinion in this case, Mosaic filed its Notice of Area 2 Uplands Mining (Dkt. 118), based on its position that said mining does not require a Clean Water Act (CWA) Section 404 permit. The Parties agree that the relevant area contains wetlands under federal jurisdiction, but Mosaic asserted it would avoid impacts to these wetlands.   Plaintiffs partially based their renewed Preliminary Injunction request on Mosaic's notice.

Mosaic's current motion seeks to have the Court stay the injunction and allow Area 2 mining.

As a threshold matter, the Court grants Mosaic's request for clarification.  The Court's 2011 Preliminary Injunction did indeed enjoin Area 2 uplands mining.  The Court noted that the Corps conceded that Area 2 is part of the permitted project and that it appeared Area 2 had not been considered by the Corps as a standalone alternative to the permitted plan.  Thus, the Court found it had jurisdiction over this matter and the Preliminary Injunction at issue covers Area 2 mining.

**Standard**

To secure a stay pending appeal, the moving party must demonstrate

3

(1) a strong showing of the likelihood of success on the merits; (2) that the moving party will be irreparably injured absent the relief; (3) that the issuance of the stay or injunction will not substantially injure the other parties interested in the proceeding; and (4) that the public interest will not be adversely affected by the requested relief. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).[2]

Mosaic notes that "on motions for stay pending appeal the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981).[3]

**Summary of Arguments**

Mosaic contends that the injunction should be stayed because: (1) the Court did not find a likelihood of success on the merits of Plaintiffs' claims concerning Area 2; (2) it does not need a permit to conduct uplands

---

[2] Most internal citations are omitted in this Order.

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

mining; (3) the Court lacks authority to enjoin Area 2 mining; (4) the Court cannot enjoin Area 2 mining based on the possibility that the state reclamation plan may need to be modified; (5) the determination of whether the Corps' permit may need to be modified is within the absolute discretion of the Corps and is not judicially reviewable, and, (6) despite the disputed factual issues relating to the harm allegedly caused by Area 2 mining, this Court did not hold a hearing.

Plaintiffs counter that the Court has jurisdiction because Area 2 is factually and legally intertwined with the permitted project and note Mosaic's prior representations that uplands mining by itself is not economically feasible and, more importantly, that mining uplands will have adverse impacts on wetlands in the project area.

Plaintiffs allege a supplemental EA must be generated for Area 2 because the proposed uplands mining will affect jurisdictional wetlands and because the relevant EA stated that "fill would not be placed in uplands but for placement of fill in to the waters of the U.S..."  Further, Mosaic's proposed Area 2 mining requires a change in the access corridors and sequence of  mining; Plaintiffs contend Mosaic's Area 2 proposal was not adequately considered by the Corps.  In addition, Plaintiffs note that

5

Mosaic's vice president previously stated mining uplands will create a materials imbalance. Lastly, Plaintiffs again contend that their case is founded on an NEPA violation rather than a CWA violation.

**Analysis**

The Court first acknowledges Mosaic's argument that Plaintiffs have been inconsistent regarding their uplands mining position. Mosaic is correct that Plaintiffs initially stated they were not generally opposed to uplands only mining and in 2010, the Court expressly allowed Mosaic to proceed with "no action alternative" uplands mining. However, Area 2 was not included in the no action alternative and Plaintiffs were not informed that Mosaic intended to mine Area 2 until April of 2011.[4]

_____

[4] In the fall of 2010, Mosaic and Plaintiffs negotiated a settlement allowing Mosaic to mine "Phase 1." Evidently, instead of attempting to reach another settlement with Plaintiffs regarding Area 2, Mosaic instead secured the relevant non-federal approval and then informed the Plaintiffs and the Court of the planned Area 2 mining. As noted, the notice of Area 2 mining was filed in this Court eleven days after the Eleventh Circuit issued its opinion.

Plaintiffs contend that the proposed Area 2 mining would create a "bizarre situation...in which the wetlands near the center of the area would be completely encircled by mining so they are hydrologically cut off and left on top of a pedestal up to 55 feet in the air."

The Federal Defendants have stated that Area 2 was considered in connection with the "stream crossings only alternative" but was rejected

Further, *after* the Court entered its 2010 injunction, Mosaic produced evidence that indicated uplands mining will result in adverse impacts to the wetlands in the project area. Plaintiffs have made a compelling case that uplands mining would adversely affect the adjacent wetland function.[5] Plaintiffs' objection to the proposed Area 2 mining was supported by objective evidence.

**Supplemental EA**

Next, Mosaic notes that the Court's injunction did not specifically find a likelihood of success on the merits of Plaintiff's supplemental EA claim. However, the 2011 Preliminary Injunction observed that Mosaic's Area 2 mining notice constituted a change in circumstances. As noted by Plaintiffs, their "Claim IV" called for a supplemental EA based on this

---

because it was not the least damaging practicable alternative. (Dkt. 156, page 5 and Dkt. 162). Plaintiffs assert that Area 2 was not part of this alternative even though it was within the geographical boundaries of this alternative.

[5] The Court recognizes that Mr. Meyers' fifth declaration discusses material imbalances in *permanent* uplands only mining (Dkt. 159-15). However, Mr. Meyers' prior declaration (Dkt. 96-3) was not limited to permanent uplands mining. The Court notes that because the declaration was submitted in support of Mosaic's motion for a stay of the 2010 *preliminary* injunction, its assertions would not logically apply exclusively to a *permanent* uplands mining scenario and the relevant assertions did not purport to apply to permanent uplands mining.

change in circumstances.

While the Court did not make an explicit finding that the Corps was required to supplement the EA, it did find that the Area 2 notice modified the overall plan regarding the order of mining and the access corridors.[6] Plaintiffs have made a compelling case that EA supplementation is required.

In its response to Plaintiffs' preliminary injunction request, the Corps argued that Plaintiffs could not establish that it unreasonably delayed preparation of a supplemental EA because Mosaic did not file the Area 2 notice until shortly before the Plaintiffs filed the preliminary injunction request.   The Court did not find that the Corps unreasonably delayed preparation of a supplemental EA and understands the Corps' time constraints. As addressed in the 2011 Preliminary Injunction, Mosaic's Area 2 notice changed the course of this case.[7]

---

[6] The Federal Defendants correctly noted that the Corps was not required to consider "each conceivable iteration" in its alternatives analysis. The Area 2 mining before the Court, however, is not a mere conceivable iteration but a concrete proposal.

[7] The Corps also noted that it had not waived its sovereign immunity regarding the Area 2 claim and the proposed mining does not require agency action.  However, while it may certainly be true that Plaintiffs cannot establish the Corps unreasonably delayed preparation of a supplemental EA, the APA provides for a limited waiver of sovereign

**Jurisdiction**

Regarding the jurisdictional question, Mosaic again contends that the Corps' Clean Water Act (CWA) jurisdiction is limited to activities involving the discharge of dredged or fill material into the waters of the United States and notes that without CWA jurisdiction, a Court cannot enter a NEPA injunction.

Plaintiffs counter that the jurisdictional wetlands will be *impacted* even if there is no direct materials *discharge*; wetlands in and adjacent to the uplands will be "dewatered." Plaintiffs note that 33 C.F.R. Pt. 325 App. B (2) states:

"The district engineer is considered to have control and responsibility for portions of the project beyond the limits of Corps jurisdiction where the Federal involvement is sufficient to

---

immunity to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C.A. § 706(1). Plaintiffs' claim may hinge not on unreasonable delay but on its position that a required supplemental EA was withheld.

The Court also notes the Corps' position that the proposed Area 2 mining would not necessitate discharges into jurisdictional wetlands. However, as previously noted, Plaintiffs' argument is that the mining will result in *impacts* to these wetlands. Plaintiffs have provided sufficient evidence, including Mosaic's own past statements, to support this position.

turn an essentially private action into a Federal action. These

are cases where the environmental consequences of the larger

project are essentially products of the Corps permit action."

Further, as also noted by Plaintiffs, when determining whether the

Corps' decision extends to non-jurisdictional areas of the project, one

consideration is "[w]hether there are aspects of the uplands facility in the

immediate vicinity of the regulated activity which affect the location and

configuration of the regulated activity." *Id.* at (ii). The Court agrees with

Plaintiffs that the Area 2 uplands are "in the immediate vicinity" of

jurisdictional wetlands and the Area 2 proposal would "affect the location

and configuration of the regulated activity." It appears that Plaintiffs are

correct in asserting that "the berms around the wetlands, the access

corridors, and the order of the mining plan would all be changed."

In addition to the relevant regulations, Plaintiffs cite *Save Our*

*Sonoran, Inc., v. Flowers*, 408 F.3d 1113 (9th Cir. 2005).   In that case, the

court held that the Corps was responsible for analyzing all parts of a

project in its EA, including the uplands, and that the district court properly

enjoined the uplands disruption along with the rest of the project. Like

Mosaic, the applicant argued that the court had no jurisdiction to enjoin

10

construction on the upland parts of the project because the construction did not require dredging or filling of jurisdictional waters. The court held the district court had the power to enjoin the entire project because it found that any development would *impact* jurisdictional waters; the whole of the property fell under the Corps' permitting authority and the court's authority to enjoin development.   *Id.* at 1122-3.

While this Ninth Circuit holding is not binding upon the Court, it does appear to be on point.  Importantly, it appears that both in the instant case and in *Flowers*, the navigable waters are interspersed through the relevant area. *Id.* at 1124.[8]

Here, the EA explains that the project area covers the entire 10,856 acres of the South Fort Meade site, including the uplands, because "[a]lthough upland fill is not subject to the jurisdiction of the Corps, fill would not be placed in uplands but for the placement of fill into waters of the U.S., including wetlands." (Dkt. 19-3-EA-at 7).

Further, the EA states the Corps has jurisdiction over the entire

---

[8]   It is interesting to note that the *Flowers* "waters" were mere "washes."  Jurisdiction over these "typically dry land features," was criticized in *Rapanos v. U.S.,* 547 U.S. 715, 727-8 (2006).

property and the federal permit incorporated Florida's DEP permit which defines the project as activities "on 7,753 acres of uplands, wetland and other surface waters." (AR135993)

Mosaic argues that the Court's finding that the Area 2 proposal may be considered a modification of the overall plan relates entirely to the state reclamation plan. However, the Court's Order did not hinge upon modification to the state's reclamation plan. Instead, the Court issued the injunction based in part on Plaintiffs' argument that the proposed Area 2 mining will impact jurisdictional wetlands even if there are no direct discharges and because mining Area 2 would require a change in the access corridors and order of mining. The Court's ruling also noted Plaintiffs' argument that Area 2 is part of the permitted project and, lastly, that Mosaic's own expert called uplands only mining into question from an environmental prospective. Further, the Court noted that Area 2 as a standalone alternative had not been analyzed by the Corps.

While the Court did not explicitly rule on the EA issue, the need for an Area 2 standalone analysis- as a modification to the overall plan- was indeed discussed by the court.

The Court again notes the potential for uplands mining resulting in

12

wetland impacts. In the Corps' own filing it concedes that "on site alternative #4 would not provide sufficient ...land to construct a clay settling area which is necessary..." (Dkt. 162, page 2, note 3), but also notes in a separate filing that Mosaic proposes Area 2 mining "only as an interim step pending...full mining...set forth in its permit." (Dkt. 156, page 5).   Thus, it appears that the Corps concedes that the proposed Area 2 mining is problematic from an environmental prospective but also assumes that the permit challenge will ultimately fail.

**Hearing**

The Court ordinarily holds hearings on preliminary injunction requests and did indeed hold a hearing on the 2010 request in this case. However, given the time sensitivity of the Area 2 issue, the Court did not hold a hearing on the 2011 preliminary injunction request.

Regardless, the Court did provide ample opportunities for all parties to submit evidence and written briefing to support their arguments and educate the Court.[9]

As far as Mosaic's representation that the Court "relied on Plaintiffs'

---

[9] The Court allowed Mosaic and the Federal Defendants to file an opposition as well as a surreply. It also directed separate briefing regarding the Federal Defendant's consideration of Area 2 (Dkt. 154).

allegations to conclude that there would be impacts to adjacent wetlands," this assertion is disingenuous at best. The Court relied on both Plaintiffs' and Mosaic's experts to make its finding as to jurisdictional wetland impacts. Further, the facts that are in dispute did not need to be resolved to rule on the injunction request.

As the Eleventh Circuit has stated, "where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *McDonald's Corp. v. Roberson*, 147 F. 3d 1301, 1313 (11th Cir. 1998)(internal citation omitted).

Also of note, the Court informed the parties on June 17, 2011 that it may not hold a hearing on the preliminary injunction request but at the same time allowed all parties to submit memoranda above and beyond normal preliminary injunction briefing (Dkt. 154). No party objected to this Order. The Court allowed Mosaic a more than adequate opportunity to present its arguments and evidence. In conclusion, Mosaic has failed to demonstrate it is entitled to a stay of the Preliminary Injunction pending appeal. Accordingly, it is **ORDERED**:

1. Mosaic's Motion to Stay (Dkt. 173) is **DENIED**;

14

2. Mosaic's Motion to Strike (Dkt. 163) is **DENIED**.

**DONE AND ORDERED** this ___**3**___ day of _January_ 2012.

HENRY LEE ADAMS, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record

15